# In the matter of Sarah Way.

*Police court of Detroit—Station house sessions—Stereotyped forms of complaint—Vagrancy—Arrests without process.*

Printed forms of complaint, filled out by inserting names and dates and containing general allegations only, sworn to as a matter of form by a policeman, are disapproved, as failing to meet the constitutional requirement of probable cause to support a warrant.

Vagrancy is distinguished from disorderly conduct and breaches of the peace, and includes only such cases of vagabondage as are known to the common law; and its statutory definition cannot be enlarged by municipal ordinance.

The charter of Detroit authorizes the police justice to sit at the station house at prescribed times, where "he shall summarily examine into the case of every person confined in said station-house, and if he adjudge any person guilty of vagrancy, disorderly conduct, or any violation of the city ordinances relative to breaches of the peace, he may convict," etc., and inflict the punishment authorized by this section. Act 136 of 1861, sec. 35 [§ 12]. *Held* that the station-house sessions are not designed for the trial of ordinance cases, and that this section excludes any prosecution for vagrancy under the ordinances; that it does not refer to vagrancy and disorderly conduct in connection with the ordinances; and that even in regard to breaches of the peace, punishment is to be inflicted under the charter and not the ordinances, which are merely referred to as restrictive and descriptive and not as grounds of procedure.

The police justice of Detroit has no general powers to act when and where he chooses; and cases under city ordinances are not part of his general business as a justice of the peace.

At common law a justice of the peace had no power to try offenses, and was only an examining magistrate.

The right of prisoners to a fair and public trial and to protection against oppressive and irregular action cannot be abridged.

The power of the police justice of Detroit to sit at the station-house is exceptional and limited; it is confined to the cases of persons under arrest, who are entitled to as speedy an examination as possible, and who cannot be deprived of any right they would have at the regular sessions of the court.

Arrests cannot be made without due process of law. Arrests without warrant are unlawful except where public security requires it, as in cases of felony and breaches of the peace committed in the officer's presence; they can rarely be justified in cases of vagrancy, and disorderly conduct can generally be more legally dealt with by regular process.

HABEAS CORPUS. Application submitted and granted June 17. Opinion filed July 1.

*Thomas D. Hawley* for the petitioner.

*Charles E. Miller* against.

CAMPBELL, C. J. Sarah Way was brought before us on return to a *habeas corpus*, as confined in the Detroit House of Correction on a conviction of vagrancy, set out as committed "in violation of section 1, chapter 78,

title 8, pages 175 and 176 of Revised Ordinances of said city, contrary to the ordinances of said city in such case made and provided."

It appears from the commitment that she had been arrested and confined in the station-house before any complaint; that a complaint was then made by Charles E. Reynolds, a policeman, which contains no specific facts, but swears positively, and therefore on his responsibility for the oath, that on the fifteenth day of May, 1879, and for one month preceding, she was unlawfully and willfully guilty of vagrancy, for that she being an able-bodied person had been during that period, in said city, lodging, loitering and rambling about from place to place, neglecting all lawful calling and employment, and not having any home or visible means of support, and not giving a good account of herself.

The remarkable character of such a complaint is only explained by the fact that it is entirely a printed form, except as to names and dates. It certainly is not such a document as ought to be presented under the constitutional provision requiring that no warrant shall issue without probable cause. Such comprehensive and wholesale swearing to a whole catalogue of conditions, some of which cannot possibly have been known to the complainant, and none of which are specific, and the habitual use of such documents, evident from the printed forms of complaint and commitment, are not calculated to recommend the proceedings to favorable consideration.

While we are not required in the present case to attempt any complete definition of vagrancy, yet it seems necessary in referring to the statutes, to suggest that the common council cannot enlarge the term or include in it anything that is not vagrancy under the statutes. Vagrancy is distinguished expressly from disorderly conduct generally, and from breaches of the peace. Comp. L. § 1960; Charter of Detroit, ch. 13, § 12. (Sess. L. 1861, p. 201). It can only reach such cases of vaga-

bondage as come fairly within the common law meaning of the word, which was possibly designed to protect the public from expense, quite as much as from disorder.

The commitment and conviction are attacked on several grounds, presenting some very serious questions. As the present case is a very clear case of illegality, we do not propose to refer to all of these matters, upon some of which—if necessary to be decided—we should prefer a fuller return.

By chapter 13, section 12, of the Charter of Detroit (Sess. L. 1861, p. 210) the police justice is authorized to hold sessions at the station-house at prescribed times, where "he shall summarily examine into the case of every person confined in said station-house, and if he adjudge any person guilty of vagrancy, disorderly conduct, or any violation of the city ordinances, relative to breaches of the peace, he may convict," etc., and inflict the punishment authorized by that section.

This section is too plain to need construction, in excluding any prosecutions for vagrancy under the ordinances. We have more than once construed this section and held that even in regard to breaches of the peace the offenses punishable were punished under the charter and not under the ordinances, which are merely referred to as restrictive and descriptive, and not as the grounds of procedure. Vagrancy and disorderly conduct are not referred to in connection with the ordinances at all. *Wayne County v. City of Detroit*, 17 Mich., 390; *People v. Controller of Detroit*, 18 Mich., 445; *Mixer v. Supervisors of Manistee*, 26 Mich., 422; *Fennell v. Common Council of Bay City*, 36 Mich., 186.

It was claimed, however, that the police justice has general powers to act when and where he chooses, and that the conviction may be sustained accordingly. We think not.

The police court has no general power given it by the legislature to try ordinance cases at all. How far that body can delegate power to a common council to

confer or regulate jurisdiction in a state court—as it has attempted to do by section 10 of chapter 13—we do not propose to consider on this record, because the station-house sessions are not permitted for any such purpose, and it cannot be claimed that ordinance business forms any part of the general business of a justice of the peace.

At common law a justice of the peace had no power to try any offenses whatever. He was no more than an examining magistrate, to inquire into offenses with a view of holding parties for trial on indictment elsewhere, if sufficient cause was shown to commit the accused. But the power of trying and convicting petty offenders is entirely statutory, and must be conducted as the law prescribes.

It is a fundamental rule of law and justice that prisoners shall have a fair and public trial, with every protection against oppressive and irregular action. The police court of Detroit was organized under the old constitution, and preserved by the express provisions of the constitution of 1850, to secure and not to destroy these rights. Before that court was created, a vindictive prosecutor might complain before any magistrate in the county and have a prisoner hurried to a remote place away from the means of securing counsel and witnesses, and thus convicted and punished without a fair hearing. The statute creating that tribunal gave it jurisdiction over all offenses committed in the city of Detroit either for examination, or for trial, according to their grades. It required the police justice to keep an office, and his duty was to hold a court,—which in itself requires publicity. In 1863 a clerk was provided for. The statute throughout contemplates that all the business shall be done in some regular and accessible place, with all the decency and order belonging to any tribunal.

The power to sit at the station house is so carefully defined that it must be regarded as limited and exceptional. It certainly was never intended, and could not

lawfully be made to deprive prisoners of any one of the rights they would have anywhere else. It was meant for beneficial and not for oppressive purposes. But inasmuch as the place is not from its nature adapted for convenient access to the public to as great an extent as the court-room should be, and inasmuch as police quarters must always savor more strongly of imprisonment and coercion than is wholesome for judicial procedure, the power to act there is confined to the cases of persons already under arrest, who are entitled to as speedy an examination as possible, and who might be prejudiced by delay. But the idea that they can be deprived of any right which they would have at the regular sessions cannot be tolerated. It is not in the power of any authority in the State to abbreviate that privilege.

It must not be forgotten that there can be no arrest without due process of law. An arrest without warrant has never been lawful except in those cases where the public security requires it; and this has only been recognized in felony, and in breaches of the peace committed in presence of the officer. *Quinn v. Heisel,* 40 Mich., 576; *Drennan v. People,* 10 Mich., 169. It could not have been contemplated—inasmuch as we are bound to suppose the Legislature intended to respect constitutional safeguards,—that the station-house sessions would have occasion to deal with many cases of misdemeanors, nor with any when an arrest could be safely postponed. The occasions which would justify arrest without process must be very rare indeed in cases of vagrancy; and in a city no larger than Detroit, persons charged with disorderly conduct can very generally be dealt with more legally and justly in the regular way, inasmuch as very much of it involves no immediate danger to public or private security.

Making, as we are disposed to make, all proper allowance for zeal of police officers in dealing with persons who are supposed to be bad members of society, it is

the duty of all courts to prevent good or bad citizens from being unlawfully molested. Official illegality is quite as reprehensible as private violations of law. The law of the land must be accepted by every one as the only rule which can be allowed to govern the liberties of citizens, whatever may be their ill desert.

We think the proceedings in the case before us do not justify the detention of the prisoner, who is accordingly discharged.

The other Justices concurred.