78    573
s44NW 579
s18ASR 478
133   1 62

78  573
f149 1204

### JENNIE PINKERTON v. MARINUS VERBERG.

*Arrest—Misdemeanor—Warrant—Street walking.*

1. An arrest, without a warrant, of an alleged prostitute or street-walker by a police officer, who is authorized by ordinance to arrest, upon view, any person found in the act of committing any offense against the laws of the State, on mere suspicion that she is plying her vocation upon the street, no act being committed in his presence indicating that she is there for that purpose, is illegal.

2. The following propositions are summarized from the opinion of Mr. Justice LONG:

   *a*—Personal liberty, which is guaranteed to every citizen under our Constitution and laws, consists of the right of locomotion,—to go where one pleases, and when, and to do that which may lead to one's business or pleasure, only so far restrained as the rights of others may make it necessary for the welfare of all citizens.

   *b*—One may travel along the public highways or in public places; and while conducting himself or herself in a decent and orderly manner, disturbing no one, and interfering with the rights of no other citizen, there, they will be protected under the law, not only in their persons, but in their safe conduct.

   *c*—The Constitution and the laws are framed for the public good, and the protection of all citizens; and no one may be restrained of his liberty, unless he has transgressed some law.

   *d*—Any law which would place the keeping and safe conduct of another in the hands of even a conservator of the peace, unless for some breach of the peace committed in his presence, or upon suspicion of felony, would be most oppres-

sive and unjust, and destroy all the rights which our Constitution guarantees.

   *e*—Suspicion that a party has on a former occasion committed a misdemeanor is no justification for giving him in charge of a constable without a justice's warrant; and there is no distinction, in this respect, between one kind of misdemeanor and another. 1 Archb. Crim. Pr. & Pl. 102 (note 1).

   *f*—An arrest for misdemeanor, without a warrant, by one who does not see the offense committed, is illegal.

Error to Kalamazoo. (Buck, J.) Argued November 1, 1889. Decided December 28, 1889.

Case. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*Hampden Kelsey,* for appellant.

*James H. Kinnane,* for defendant.

LONG, J. This action is brought by plaintiff to recover damages for assault and illegal arrest. Defendant, at the time of the arrest, was a policeman of the city of Kalamazoo, and claims to have arrested plaintiff because she was a street-walker.

It appears that plaintiff lived on Kalamazoo avenue east, and sometime in the forepart of August, 1888, went from her own home to a sister's, living on the corner of Church and Eleanor streets, in the city. There she met a younger sister, and the two went down into the city upon the main street; called into the Watkins House closets; and after plaintiff had shown the younger sister, who had no acquaintances in the city, around the city for a time, the two went together back to the home of the sister, when plaintiff started to return to her home, and in doing so she again passed the Watkins House, but on the opposite side of the street. After having gone some little distance from there towards her own home, she heard some one following her on the walk. She

hastened her speed, but, when near the railroad crossing, Mr. Verberg, the defendant, walked up to her side, and asked where she was going. She told him she was not going very far, and then he wanted to know where she lived. To this plaintiff responded that she did not know as that made any difference to him. Defendant then asked what her name was. She told him that did not make any difference to him, and that she was attending to her own business. Defendant continued to walk with her until she got to her own door, and she then told him that she lived there. Plaintiff then told him he was not much of a gentleman to be following her home, when he said not to give him any more sauce, or he would take her and run her in. Plaintiff then says:

"I told him I had not done anything to be run in for; that I did not know what he could run me in for; I guessed I had not done anything out of the way; and so he took hold of me, and took me up town. When he got up to the corner of Water street, I told him I was not going any further with him, and he got hold of me, and tore my dress pretty nearly all off of me, and tried to make me walk, and blew a whistle, and Mr. Warren, who was across the street, came over, and asked him what he arrested me for, and he said he had made up his mind that he would not take any more of my sauce, and when they got upon the corner they stopped there, and Mr. Warren told him he knew me; that I was a married lady. They went out to one side, and had a talk, and Mr. Warren said: 'You can do as you have a mind to; but I don't think you had better lock her up.' Mr. Warren walked down Main street, and Mr. Verberg said I could go home if I wanted to; but, if he ever caught me out again as late as that, he would take me and lock me up. It was then about half past ten o'clock, and I went home."

Witness further stated that defendant took hold of her arm at and in front of her own house, and pulled her along as far as the railroad, and as far as Water street,

when he tore her clothes because she would go no further.

Defendant gave his version of the affair, on his direct examination by his own counsel, as follows:

"I saw her on this particular night by the Watkins House with three other women, and they all went into the house. I slipped into the office of the Watkins House. They stayed in there a few minutes, and came out, and went up as far as Rose street. They crossed over, and she came down the street alone. She went east on Kalamazoo avenue. I walked down that way to see what was going to be done. I believed she was plying her vocation as a prostitute. She walked quite fast. I walked down to the Grand Rapids & Indiana R. R., caught up to her, and asked where she lived, and what her name was. She said it was none of my business. I said: 'I have asked you a civil question, and I would like to have you answer it.' She said: 'I don't have to answer any questions from you.' I said: 'Well, I have had orders to that effect, to make these street-walkers get off the street or lock them up.' By this time she had got in front of her own house. I didn't know at that time that she lived there. She said: 'I dare you to arrest me.' She said I had no business down there; I had no business to follow her; she was attending to her own business, and I had to attend to mine. She dared me to lock her up; to arrest her. At first I started away. She hallooed after me: 'Will dare you to arrest me.' I came back and said: 'Come on; if you want to go to jail, I can take you there.' So we walked up as far as Dickinson's hardware store, and she stopped, and I says: 'Come on; don't stop here.' She walked along then, and right in front of the restaurant, between the alley and back of McDonald's drug-store, she threw herself right down on the sidewalk, and I asked her to get up two or three times. She refused to do it. I thought by the way she acted and talked she had been drinking. I didn't see any one around close by. I didn't want to have no regular wrestle there, so I blew my whistle, and Mr. Warren came up, and assisted me in getting her up. When we got her up by the corner of Main and Rose streets, she said, if we would not lock her up, she would go home, and she awfully hated to be locked up,—begged in that way. I

spoke to Mr. Warren a few minutes, and finally told her, if she would go home, I would let her go to-night, and, if I caught her out again, I would lock her up, as late as that."

Witness further testified that he did not know that he tore any of her clothing.

It will be noticed that there is but little difference in the versions given by the parties to the controversy as to what took place on that occasion. The court, in his charge to the jury, stated:

"The defendant claims that he had a right to arrest the plaintiff because he was at the time of making the arrest a policeman of the city of Kalamazoo, and that at the time of the arrest the plaintiff was engaged in the commission of an offense against the law.

"The charter and ordinances of the city of Kalamazoo provide that policemen shall have authority to arrest, without warrant, all persons who shall, in their presence, be guilty of any offense, misdemeanor, or breach of the peace, or who shall, in their presence, be guilty of any disorderly conduct, for punishment of which a warrant could lawfully issue. Disorderly conduct for which an arrest might be made without a warrant, if committed in the presence of the officer, would include what is commonly termed 'street walking.' That is the offense of a common prostitute offering herself for sale upon the streets at unusual or unreasonable hours, endeavoring to induce men to follow her for the purpose of prostitution; and, in case such an offense is committed in the presence of an officer, a policeman has not only the authority, but it is also made his duty, to arrest the person so offending. So, in order to determine whether the defendant had the right to make the arrest complained of in this case, it will be necessary for you to inquire and determine whether the plaintiff was at the time of the arrest engaged in the commission of any offense, or whether the defendant had any reasonable ground for believing she was.

"If you should find that at the time she was arrested by defendant she was conducting herself in an orderly manner, not committing any breach of the peace, or disorderly conduct, or offense against the law, and that the

defendant had ·no reason to believe she was, then the defendant had no right or authority to arrest her, and the plaintiff would be entitled to a verdict; and in such a case it makes no difference what her past history may have been, nor what her character was, so far as any justification of the defendant was concerned. But if you find, from the evidence in the case, that at the time of the arrest the plaintiff was a woman of unchaste character, and was upon the street engaged in street walking,—that is, if she was upon the street for the purpose of attracting attention, and inducing men to follow her for purposes of prostitution,—then the plaintiff is not entitled to recover, and your verdict should be for the defendant, unless you find that defendant used unnecessary force and violence in making the arrest.

" Or if you find, from the evidence in the case, that the plaintiff was at the time of her arrest by the defendant an unchaste woman, and known by the defendant to be so, and if you also find that she had at· that time the reputation of being a common prostitute, whether that reputation was deserved or undeserved, and that this reputation was known to defendant, and if you further find that she was at that time upon the public streets, at such an hour and under such circumstances,—if her conduct was such,—that the defendant had reason to believe that she was engaged in street walking,—then, whether she was so engaged in street walking or not, the defendant would be justified in making the arrest, and, unless you find he used unnecessary force and violence in making the arrest, your verdict should be for the defendant. The question, as I have already indicated· to you, is not altogether whether the plaintiff was already engaged in street walking, but whether the defendant had reasonable ground to believe she was, and made the arrest upon such ground. If he had reasonable ground to believe that she was engaged in street walking, and made the arrest on such ground, then defendant. would not be liable, although, as a matter of fact, the plaintiff was in the streets for a legal purpose."

In order to better understand the force and effect of this charge, it will be necessary to consider the evidence to some extent that the court permitted the defendant to introduce. While the plaintiff was on the stand as a

witness in her direct case, the counsel for the defendant was permitted, under objection of plaintiff's counsel, to ask her:

"Your husband had you arrested the other day for assault and battery?"

It appears that this arrest was made after the time of the assault claimed to have been made in the present case, and the witness testified that she had never been arrested in her life, until the time when the defendant arrested her. In answer to the question propounded, she stated that her husband did cause her arrest for assault and battery. Witness was further asked if, upon one occasion, Officers Warren and Verberg did not call upon her one night, and find her in bed with one Charles Vose. Plaintiff denied this, and claimed that she had a room there, and worked for Charles Vose, and his father and mother, in their restaurant. It appears that, several years before this arrest, plaintiff's husband had been arrested, and convicted, and sent to State prison for some offense, but had recently returned. The plaintiff and he were then living together.

The defendant, while on the stand as a witness, was permitted to testify that about a year previous he and another policeman visited the Gale Block, in which was the Vose restaurant, and there knocked on the door; that Mr. Vose came to the door, and, being asked who was in there with him, answered that it was his wife; that he had also seen the plaintiff a great many times on the street at from 10 to 12 o'clock, and that she did not seem to be doing any business, but just walking the street.

Plaintiff was recalled by the defense, and testified that she was never put out of the Gale Block in consequence of living with Mr. Vose; that he did not live there with her; that he had a room there, and she had a room, and a good many others had rooms there; that Mr. Miller,

the janitor of the building, never told her to move out in consequence of the manner in which she conducted herself. Mr. Miller was then called by the defendant, and testified that plaintiff had rooms there; that he served papers to get Vose out, but was not acquainted with the reputation of the plaintiff at that time; that he saw a man in there one night, but could not see if there was anything wrong; that it might have been Mr. Vose, as he told him they were going to be married in about a week. Witness testified that he saw men go into the big hall door, but could not say whether the room where they went was occupied by her.

Mr. Warren was also called, and testified to seeing plaintiff in bed with Vose. Other testimony of like character was also given by defendant, under objection of counsel for the plaintiff. Defendant also gave evidence of the general reputation of the plaintiff as a common prostitute. Plaintiff denied all the specific acts of lewdness to prove which such witnessess were called.

At the close of the testimony the counsel for plaintiff asked the court to instruct the jury:

"1. If the jury shall find that the plaintiff, at the time she was arrested by the defendant, was conducting herself in an orderly manner, and not committing any breach of the peace, then the defendant had no right or authority to arrest her.

"2. No officer is justified in making an arrest without a warrant, when the person whom he arrests is peaceable, and not engaged in open violence; as, for example, by fighting, engaging in a riot, or about to escape after committing a felony.

"3. The law does not look with favor on arrests made without a warrant, and an arrest without a warrant cannot be justified if the person arrested was not engaged in a breach of the peace; as, for example, in fighting, or in a riot, or about to escape after having committed a felony.

"4. If the jury shall find that the plaintiff was, at

the time she was arrested, walking on the street, without molesting any one, then she was not committing any act that would justify the defendant in arresting her without a warrant, and his act in arresting her was unjustifiable, and the burden is on him to justify the act.

" 5. If the jury shall find from the evidence that the plaintiff, at the time of her arrest, was walking on the street in a lawful manner, then the jury would be warranted in going beyond actual damages, and giving the plaintiff a further sum as exemplary damages."

These instructions the court refused.

It is insisted here that the arrest was legal, and within the authority of the officer, under the provisions of section 3 of chapter 14 of the charter of the city of Kalamazoo.  This section is as follows:

" SEC. 3. The marshal and police shall have and exercise, within said city, all the power given by law to constables for the preservation of the peace and to apprehend and arrest offenders against the laws of the State. They shall have the power to enter any disorderly or gaming house, or dwelling-house, or any other building where a felon is known to be secreted or harbored, or where any person is who has committed any breach of the peace, or where any felony or breach of the peace has been committed.

"It shall be the duty of the said marshal and police, and they are hereby fully authorized, to suppress all riots, disturbances, and breaches of the peace; to arrest, upon view, all persons fleeing from justice; to apprehend, upon view, any person found in the act of committing any offense against the laws of the State; and to take such persons before the proper officer or magistrate, to be dealt with according to law; to make complaints before the proper officer or magistrate of any person known, or believed by them, to be guilty of crime, or having violated any ordinance or regulation of said city; and to serve all process, writs, and warrants that may be delivered to them for that purpose, or that may be required in any prosecution for the violation of any ordinance or regulation of said city.

" In prosecutions under any city ordinance or regulation of said city, the marshal and regular police thereof

shall have the same powers, and shall perform the same duties, as are given to and performed by constables under the laws of the State; and, generally, they shall perform all such duties pertaining to their respective offices as may be required by the city council."

It is claimed further, by counsel for defendant, that the question whether the plaintiff was at the time of the arrest engaged in street walking or not, or whether the defendant had reasonable grounds to suppose that she was, was a question for the jury, and, as such, was properly submitted to them; that it appears from the record the officer well knew the reputation of the appellant, and that she was a common prostitute; and, judging from her actions, the unseasonable time of the night, and the suspicious quarter of the city, it cannot be said the officer acted arbitrarily, or without good and reasonable grounds for assuming and believing that the appellant was then and there on the public streets plying her vocation as a common prostitute. Counsel states, as a further proposition, that,—

"Assuming it to have been true that the defendant acted upon an uncertainty, but had good and reasonable cause to believe that the plaintiff was conducting herself unlawfully and in a disorderly manner, and did so believe, he would still be justified in making the arrest in the manner that he did."

It is not claimed that the defendant had a warrant for the arrest of the plaintiff at the time he took her into custody, and started to convey her to the jail; and it appears that no warrant had ever been issued for the plaintiff's arrest for that or any other offense. From the whole record, it appears that the only excuse offered by the defendant for the arrest on that night was that he had heard her reputation as a common prostitute discussed by the police officers of the city, and some others; had made up his mind that she was such, and had seen

her frequently on the streets, sometimes at unseasonable hours, and at one time found her in bed with a Mr. Vose. This is about the substance of the reasons given by him which led him on that night to believe she was on the street plying her vocation as a common prostitute. All he had seen that night was that the plaintiff was down on Main street, went into the Watkins House with three other women, and from there up the street for a distance, and, turning, walked towards her own home. He does not testify nor claim that he saw her talking with any man, or that she accosted any man, or did anything more than walk along a public street towards her own home, as any decent or well-behaved lady might have done. She was even hurrying forward faster when she heard the defendant's footsteps rapidly approaching her as if to overtake her. When he had overtaken her, he asked her name and where she lived, and kept pace with her until she arrived opposite her own door. He was not successful in finding out her name, and claims the plaintiff told him it was none of his business. He started and walked away from her for a little distance, according to his own testimony, when she told him, or hallooed at him, as he says, and dared him to arrest her, when he turned and said:

"If you want to go to jail, I can take you there."

He then made the arrest. Can anything be more certain, even from the defendant's own testimony, than that the arrest was made because, as plaintiff says, she gave him some sauce, or, as defendant says, she dared him to arrest her? He knew as well when he started to leave her whether she was on the street plying her vocation as a common prostitute as he did when he made the arrest; and yet he turned away to leave, and only made the arrest when she dared him to make it.

If persons can be restrained of their liberty, and assaulted and imprisoned, under such circumstances, without complaint or warrant, then there is no limit to the power of a police officer. Personal liberty, which is guaranteed to every citizen under our Constitution and laws, consists of the right of locomotion,—to go where one pleases, and when, and to do that which may lead to one's business or pleasure, only so far restrained as the rights of others may make it necessary for the welfare of all other citizens. One may travel along the public highways or in public places; and while conducting themselves in a decent and orderly manner, disturbing no other, and interfering with the rights of no other citizens, there, they will be protected under the law, not only in their persons,' but in their safe conduct. The Constitution and the laws are framed for the public good, and the protection of all citizens, from the highest to the lowest; and no one may be restrained of his liberty, unless he has transgressed some law. Any law which would place the keeping and safe conduct of another in the hands of even a conservator of the peace, unless for some breach of the peace committed in his presence, or upon suspicion of felony, would be most oppressive and unjust, and destroy all the rights which our Constitution guarantees. These are rights which existed long before our Constitution, and we have taken just pride in their maintenance, making them a part of the fundamental law of the land. Whatever the charter and ordinances of the city of Kalamazoo may provide, no police officer or other conservator of the peace can constitutionally be clothed with such power as was attempted to be exercised here. No disorderly conduct; no breach of the peace, committed in the presence of the officer; no suspicion of felony,— and yet, under the charge of the court which counsel seeks to maintain here, a woman may, simply upon sus-

picion that she may commit an act which at most would only amount to a misdemeanor, be assaulted and imprisoned, if the officer has good reason to believe, and does believe, that she is plying her vocation in such a manner that it will result in an offense.

No more dangerous doctrine could be laid down. It is a doctrine which, if upheld, would place even the most respectable lady in the land under the surveillance of policemen, and give them authority to arrest and imprison upon mere suspicion of an offense, however insignificant; and, if carried to the extent contained in the charge of the circuit judge, it would not matter how undeserved the bad character or reputation of such person might be. If idle gossip is once set afloat, reflecting upon the character and reputation of the most virtuous woman, and that gossip once comes to the ears of the police officer, he may act upon it, and be led to believe that the woman is upon the street intending to ply her vocation as a street-walker or common prostitute, and at once, without the formality of complaint or warrant, place her under arrest and convey her to jail. The law has more regard for the liberty of the citizen, and there is a more decent and orderly manner of enforcing the law for the public good. The officer had no right to arrest the plaintiff, without warrant, upon mere suspicion that she was upon the street for the purpose of plying her vocation as a common prostitute, even under the provisions of the city ordinance above cited. Our statute gives no such right, and at the common law no such right existed. Suspicion that a party has on a former occasion committed a misdemeanor is no justification for giving him in charge of a constable without a justice's warrant; and there is no distinction, in this respect, between one kind of misdemeanor and another. 1 Archb. Crim. Pr. & Pl. p. 102, note 1; 2 Hale P. C. 89,

An arrest for misdemeanor, without a warrant, by one who does not see the offense committed, is illegal. In *People v. Pratt*, 22 Hun, 300, it was held that an officer had no authority to arrest, without warrant, a common prostitute, unless disorderly conduct is committed in his presence. It is true that an officer, as a conservator of the peace, may arrest street-walkers or common prostitutes who are on the street plying their vocation; but a mere suspicion that they are doing so, where there is no act indicating that the party is there for that purpose, will not justify the arrest without warrant. In *Sarah Way's Case*, 41 Mich. 304, Mr. Justice CAMPBELL, speaking upon the subject of arrest without warrant, says:

" It must not be forgotten that there can be no arrest without due process of law. An arrest without warrant has never been lawful, except in those cases where the public security requires it, and this has only been recognized in felony, and in breaches of the peace committed in presence of the officer. *Quinn v. Heisel*, 40 Mich. 576, and *Drennan v. People*, 10 Id. 169."

The court was in error in that portion of his charge relative to the defendant's acting upon his information and belief that the plaintiff was a common prostitute, as a justification for the arrest without warrant. The court was also in error in refusing to give the plaintiff's requests to charge. Each request stated the law correctly as applied to this case, and should have been given. The court was also in error in permitting defendant to introduce evidence of specific acts of lewdness on the part of plaintiff. On such a trial, it could not be expected that a party so attacked could be prepared to meet every issue so made.

The judgment must be set aside, with costs, and a new trial ordered.

CHAMPLIN, MORSE, and CAMPBELL, JJ., concurred.