CITY OF GRAND RAPIDS *v.* NEWTON.

MUNICIPAL CORPORATIONS—POLICE POWER—DISORDERLY HOUSES—
UNREASONABLE ORDINANCE.

A city ordinance providing that no person shall "permit drunk-
ards, intoxicated persons, tipplers, gamblers, persons having
the reputation or name of being prostitutes, or other disor-
derly persons to congregate, assemble, visit, or remain" in
"his or her house, tavern, inn, saloon, cellar, shop, office, or
other residence or place of business," is unreasonable, and be-
yond the power conferred upon the council to enact ordi-
nances to prevent vice and immorality, to preserve the public
peace and good order, and to prohibit and suppress the keeping
of houses of ill-fame or for the resort of prostitutes, in that it
is not limited in its application to places requiring police
regulation, or to assemblages of immoral persons, and does
not make knowledge of the reputation of the persons so con-
gregating or visiting, or an unlawful purpose on their part,
an ingredient of the offense.

*Certiorari* to superior court of Grand Rapids; Bur-
lingame, J. Submitted October 6, 1896. Decided De-
cember 4, 1896.

. Daniel F. Newton and James Donovan were convicted
in the police court of the city of Grand Rapids of violating
an ordinance of the city, and appealed to the superior
court. On motion there made, the complaint and war-
rant were quashed and the respondents discharged, where-
upon the city sued out a writ of *certiorari.* Affirmed.

*Henry J. Felker* and *Harvey Joslin*, for plaintiff
in *certiorari.*

*Lombard & Hughes*, for defendants in *certiorari.*

MONTGOMERY, J. The charter of the city of Grand
Rapids confers upon the common council authority to en-
act ordinances—

" To prevent vice and immorality, to preserve public peace and good order, and to prevent and quell riots, disturbances, and disorderly assemblages;  *  *  *   to prohibit and prevent any riot, rout, disorderly noise, disturbance, or assemblage in the streets or elsewhere in said city;  *  *  *  to prohibit, prevent, and suppress the keeping of houses of ill-fame or assignation, or for the resort of common prostitutes, disorderly houses, and disorderly groceries; to restrain, suppress, and punish the keepers thereof;  *  *  *  to provide for maintaining the peace, order, and good government of said city."

Assuming to act under this authority, by section 2 of an ordinance approved July 5, 1887, it was enacted:

" That no person shall permit any indecent, loud, or boisterous noise, or any fighting, quarreling, or disturbance, in or about his or her house, tavern, inn, saloon, cellar, shop, office, or other residence or place of business, nor permit persons to congregate therein to the annoyance or disturbance of citizens or others, or permit drunkards, intoxicated persons, tipplers, gamblers, persons having the reputation or name of being prostitutes, or other disorderly persons, to congregate, assemble, visit, or remain therein."

The defendants were charged with a violation of this section, under a complaint alleging that they were keepers of a saloon in said city, and did then and there permit certain persons (naming them), having then and there the name and reputation of being prostitutes, to congregate, assemble, remain, and visit therein. The trial judge, on motion, discharged the respondents on the ground that the complaint states no offense. The city asks to have this order set aside, and that the respondents be placed on trial.

The complaint does not allege that the respondents had any knowledge of the reputation of these women, nor is knowledge of such reputation made an element of the offense by the ordinance. It is evident that the trial judge was of the opinion that this section of the ordinance

is unreasonable, and beyond the power of the council to enact. We are of the same opinion. We do not hold that if the ordinance were limited in its operation to places of resort where prostitutes may be presumed to go for immoral purposes, like a liquor saloon, it may not be competent to exclude all having the reputation of being prostitutes, or that it may not be competent to require in such a case that the proprietor see to it, at his peril, that none having that reputation in fact congregate at or visit his place of business. This power to exercise stringent, regulation of the liquor traffic has been frequently recognized, and arises out of the necessities of the case. The courts recognize the fact that such places furnish facilities for unlawful conduct, and hence that regulation of such business is proper, and this court would hesitate to pronounce unreasonable stringent regulations based upon the necessity of control arising out of this condition. But the difficulty is that the ordinance in question is not limited in its application to such places of business, nor to assemblages of immoral persons. It is broad enough to render liable to its penalties a merchant at whose counter a tippler or gambler buys the necessaries of life. Indeed, it might render subject to its provisions those maintaining a reformatory home for inebriates or prostitutes. For, as before stated, knowledge of the reputation of the person visiting the house or place of business is not an ingredient of the offense, nor is any unlawful purpose on the part of the visitor required; and those amenable to the provisions of the ordinance are the owners or keepers of any house, tavern, inn, saloon, cellar, shop, office, or other residence or place of business. These provisions are plainly so broad as to render the ordinance unreasonable and beyond the power of the council, and, as we are not able to sever the provisions of this section, and to know judicially that those of the provisions which might lawfully be adopted would, by themselves, have been deemed proper, we feel bound to

hold that the offense here charged is not created by any valid ordinance.

The judgment of the superior court is affirmed.

The other Justices concurred.