*In re* STEGENGA.

1. CRIMINAL LAW—DISORDERLY PERSONS—VAGRANCY—COMPLAINT —SUFFICIENCY.

> A complaint alleging that defendant was found loitering about in common barrooms, and wandering about the streets, by day and by night, without any lawful means of support, and without being able to give a satisfactory account of himself,

for a period of two weeks, in violation of a city ordinance relating to disorderly persons, did not purport to charge defendant with vagrancy, and was therefore not objectionable for failure to allege such offense.

2. SAME—ORDINANCES—AUTHORITY OF CITY COUNCIL.

A charter provision authorizing the common council to provide by ordinance for the punishment of "disorderly persons of all kinds" should be construed in its ordinary sense, and not as limiting the authority of the council to legislate with reference to such conduct as would be regarded as disorderly under the general statute (2 Comp. Laws, § 5923) or the common law.

3. SAME—COMMON-LAW OFFENSE.

It seems that one shown to have been loitering about the streets of a city and in barrooms in idleness for two weeks, without apparent habitation, and without any means of support, giving no satisfactory explanation of his conduct, would be punishable as a disorderly person at common law.

4. SAME—ORDINANCES—REASONABLENESS—PERSONAL LIBERTY.

A city ordinance declaring that any person found loitering in any barroom, or wandering about the streets, without any lawful means of support, or without being able to give a satisfactory account of himself, shall be deemed a disorderly person, and punishable as such, is not void as an unreasonable abridgment of the right of personal liberty.

*Habeas corpus* proceedings by William Stegenga to obtain his release from the Kent county jail. Submitted April 7, 1903. (Calendar No. 19,889.) Writ dismissed April 21, 1903.

*H. Everett Moorman*, for petitioner.

*S. W. Barker*, Assistant City Attorney of Grand Rapids, for respondent.

HOOKER, C. J.   The defendant was charged with being a disorderly person, within the provisions of an ordinance of the city of Grand Rapids, and, upon a trial by jury in the superior court of that city, was convicted and sentenced.   He is before this court on *habeas corpus*.   The return shows that he is detained by the sheriff of Kent

county under the command of a commitment from said court, reciting that he was "convicted of having been found loitering about in common barrooms, and wandering about the streets, by day and by night, without any lawful means of support, and without being able to give any satisfactory account of himself, at the city of Grand Rapids, for the period of two weeks." Copies of the complaint, judgment, and commitment are attached to the return.

Section 10 of title 3 of the charter of Grand Rapids provides that:

"The common council shall have power, within said city, to enact, make, continue, establish, modify, amend, and repeal such ordinances, by-laws, and regulations as it deems desirable within said city, for the following purposes: (1) To prevent vice and immorality, to preserve public peace and good order, and to prevent and quell riots, disturbances, and disorderly assemblages; * * * (20) to provide for the punishment of vagrants, and all persons drunk or *disorderly* on the streets or public places of the city; * * * (34) to punish common prostitutes, and *disorderly persons of all kinds.*"

The ordinance in question is as follows:

"An Ordinance to Amend Section 1 of an Ordinance Entitled 'An Ordinance Relative to Disorderly Persons in the City of Grand Rapids.'

"The common council of the city of Grand Rapids do ordain as follows:

"SECTION 1. That section 1 of 'An Ordinance Relative to Disorderly Persons in the City of Grand Rapids,' as amended October 28, 1901, be and the same is hereby amended to read as follows:

"SECTION 1. Any person who shall have actually abandoned his wife, child, or children, or either, or who neglects or refuses to provide for his family, wife, child, or children; all persons who shall make any improper noise, disturbance, or riot, or shall be engaged in any illegal or improper diversion, or shall use any indecent, insulting, or immoral language, or shall be guilty of any indecent or immoral conduct or behavior in any place in the city of Grand Rapids; all tipplers, drunkards, and common prostitutes; all persons who shall collect in crowds and

bodies for unlawful and mischievous purposes in any place in said city, to the annoyance or inconvenience of citizens or others, and all persons found in a state of intoxication in any place whatever in said city; any person who shall willfully assault another in said city, or be engaged in or aid or abet in any fight, quarrel, or other disturbance in said city; any person who shall make any indecent exposure of his or her person in any street, lane, alley, or elsewhere in said city; all persons that collect or stand in crowds in front of or about any church or place of worship in said city, during service, or the gathering or the departing of the congregation, or that collect or stand in crowds or loiter about or obstruct free and uninterrupted passage on any sidewalk in said city, or in any hall, stairway, vestibule, or passage-way leading to any store, office, court-room, or public hall or building in said city; all persons that stand, loiter, or stroll about in any place in said city, awaiting or seeking an opportunity to obtain money or other valuable thing from others by trick or fraud, or to aid or assist therein; all persons that shall engage in any fraudulent scheme, device, or trick to obtain money or other valuable thing in any place in said city, or aid or abet, or in any manner be concerned, therein; all ropers, steerers, or cappers, so-called, for any gambling room or house, or for any gambling game, trick, or device, or who shall engage in any such practice in any public streets in said city; all persons found loitering about in any hotel, block, common barroom, dram-shop, gambling house, or disorderly house, or wandering about the streets, either by night or day, without any lawful means of support, or without being able to give a satisfactory account of himself or herself; and all persons that show, sell, or offer for sale or exhibit any indecent or obscene picture, drawing, engraving, book, or pamphlet in said city,—shall be deemed disorderly persons, and, upon conviction thereof, shall be punished as provided in section 7 of this ordinance."

It is contended that the complaint fails to charge a punishable act, and that the ordinance is void, and beyond the authority of the common council to enact. It is urged : *First*, that it attempts to charge vagrancy, and nothing else, and that the allegations of the complaint fail to conform to the settled definition of vagrancy; reliance being had upon *Sarah Way's Case*, 41 Mich. 301 (1 N. W.

1021). *Second*, that, if it be contended that defendant was proceeded against as an alleged disorderly person, the conviction was void, for the reason that the complaint does not charge misconduct within the statutory or common-law meaning of the term "disorderly."

We may pass the first question with the remark that the complaint does not purport to charge vagrancy, and the prosecution makes no claim that the petitioner was convicted of vagrancy.

We have seen that the charter gives the authority to the council to provide by ordinance for the punishment of all persons who shall be disorderly on the streets or public places, and, under subdivision 34, "to punish disorderly persons of all kinds." Acting under these provisions, the ordinance in question was made. It provides that one chargeable with the conduct stated in the complaint shall be considered disorderly. Petitioner's counsel says that this was beyond the power of the council, for the reason that the common law did not make such act a crime, nor does our statute. In other words, the claim rests upon the proposition that the council may not make an offense of that which would not be so under existing rules of law.

There is no lack of authority to the effect that a council cannot, by ordinance, make an offense, when such action would be inconsistent with (*i. e.*, opposed to or in contravention of) a settled law or policy of the State, unless the authority is clearly conferred. 1 Dill. Mun. Corp. §§ 89, 319, 329. It is, however, equally certain that the condition of society in cities is such as to call for more stringent regulations than those usually provided for the State at large, and there are really but two questions here: (1) Whether, in granting the charter powers hereinbefore mentioned, the legislature used the term "disorderly" in the sense of its statutory or legal definition; and, if not, then (2) whether the ordinance is reasonable, and does not transgress the constitutional rights of personal liberty.

What is meant by the term "disorderly persons of all kinds?" We have a statute (2 Comp. Laws, § 5923) which

enumerates many acts thereby made to constitute disorderly conduct, and the actors disorderly persons, subject to punishment under its provisions; and, while the punishment prescribed thereby is confined to the classes mentioned therein, it does not follow that no other acts are disorderly, or that the actors are not disorderly persons, in the ordinary sense of the term. This statute is not a limitation upon the legislature either to declare other acts disorderly, or to authorize municipal authorities to punish such acts within reasonable bounds, which is a common practice. The case of *City of Grand Rapids* v. *Williams*, 112 Mich. 247 (70 N. W. 547, 36 L. R. A. 137, 67 Am. St. Rep. 396), sustained such action under the charter in question, holding that one who peeks into the windows of the occupied house of another is punishable under this ordinance. This conviction is inconsistent with petitioner's contention. It is true that it is said in that case that the act is one punishable "as an immoral act," authorized by the first subdivision quoted from the charter, which permits the passing of ordinances "to prevent vice and immorality," and not under the power to punish "disorderly persons of all kinds," found in another subdivision; but we have no statute that makes such an act disorderly, or even punishable, any more than we have in the present case. It was said that this was an immoral act; but the ordinance explicitly declared that all persons guilty of immoral conduct should be considered disorderly persons. This ordinance, like the statute, does not attempt to punish all disorderly persons, but only such as it designates, and it calls such as violate its provisions disorderly persons. We think it clear that, when the charter mentions "disorderly persons of all kinds," it shows a legislative intent to do more than to permit the city to provide for the punishment of those already liable under the provisions of the general law. Interpreting this language in its ordinary sense, under the statute (1 Comp. Laws, § 50), makes the provision effective, while to follow the suggestion of petitioner's counsel would be to emasculate it and

make it comparatively worthless. Again, it is significant that, while subdivision 20 of the charter confers the power to punish disorderly persons, thereby clearly covering all persons coming within the statute and common law, subdivision 34 emphasizes the power, and enlarges upon the term used in subdivision 20, by including all *kinds* of disorderly persons.

Counsel has cited some of our own cases, which he relies upon as supporting his contention, and these should be considered.

The *Case of Sarah Way*, 41 Mich. 301 (1 N. W. 1021), arose under a city ordinance. This was a charge of vagrancy. It was held that, under the charter of Detroit, vagrancy meant such cases of vagabondage as come fairly within the common-law meaning of the word, and the opinion states that "vagrancy is distinguished expressly from disorderly conduct generally" by the charter, Act No. 136, Laws 1861, chap. 13, § 12. This language serves the double purpose of explaining why the term "vagrancy" was held to be restricted in that case, and of showing that vagrancy may ordinarily be considered disorderly conduct, but not where a contrary intent is manifest. We may reasonably infer that but for this the result might have been different in the *Sarah Way Case*, and that she might otherwise have been punishable as a disorderly.

The *Case of Sarah Jones Jordan*, 90 Mich. 3 (50 N. W. 1087), did not arise under an ordinance. She was charged with being a disorderly person for reasons given. It was held that the case alleged did not come within the definition of the existing statute. ,

In our opinion, neither of these cases militates against the validity of this ordinance or charge, unless we are to say that the provision of this ordinance is an unreasonable or unwarranted abridgment of liberty. The following are distinctively cases of that kind: *In re Frazee*, 63 Mich. 401 (30 N. W. 72, 6 Am. St. Rep. 310); *City of Grand Rapids* v. *Newton*, 111 Mich. 48 (69 N. W. 84, 35 L. R. A. 226, 66 Am. St. Rep. 387).

The case of *Pinkerton* v. *Verberg*, 78 Mich. 573 (44 N. W. 579, 7 L. R. A. 507, 18 Am. St. Rep. 473), does not involve the validity of an ordinance, but rather the legality of the act of the officer in assuming it to have been violated.

But it is not certain that this man was not a disorderly person, punishable at common law. For two weeks he loitered about the streets and barrooms, in idleness, without apparent habitation, and *without any means of support*, according to the charge. Yet he lived, and the inference is not unreasonable that he was supported in idleness by others in some way. He loitered about barrooms (*i. e.*, tippling places), and gave no satisfactory explanation of his conduct. Blackstone says (4 Bl. Com. 169) that all *idle persons* are punishable; while the statute 17 Geo. II, chap. 5, provided that idlers and disorderly persons, rogues and vagabonds, and incorrigible rogues should be punishable,—idlers and disorderly persons by a month's imprisonment, and the other classes by more severe penalties. And, if it be said that this statute is no part of our common law, idle persons were punishable under ancient statutes, which in their turn merely declared the common law in that respect. See 4 Bl. Com. 169. The uniformity of the practice of authorizing and passing and enforcing ordinances for the punishment of mendicants, idlers, and vagabonds is a circumstance that indicates the general recognition that such persons may be treated as lawbreakers, and punished in accordance with the general law of the land.

But little need be said on the other branch of the case, for the foregoing discussion shows that it is not an invasion of constitutional right to punish conduct in fact disorderly, and dangerous to and destructive of good order.

It does not follow that this ordinance would justify the conviction of all arrested under it, or that each of its provisions, standing by itself, would constitute an offense. We do not say that they would or would not. In this case, however, we are satisfied that the acts charged, and

of which the petitioner was convicted, constitute an offense under this ordinance, and the petition will be dismissed, and the petitioner remanded to the custody of the respondent.

The other Justices concurred.