103 N.J. Super. 552 (1968)
248 A.2d 254
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
VINCENT ZITO, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 12, 1968.
Decided December 10, 1968.
*553 Before Judges SULLIVAN, FOLEY and LEWIS.
Mrs. Miriam N. Span, Assistant Deputy Public Defender, argued the cause for appellant (Mr. Peter Murray, Public Defender, attorney; Mr. Richard Newman, Deputy Public Defender, of counsel).
*554 Mr. Robert H. Altshuler, Assistant Prosecutor, argued the cause for respondent (Mr. John G. Thevos, Passaic County Prosecutor, attorney).
The opinion of the court was delivered by LEWIS, J.A.D.
Defendant Vincent Zito, together with Charles Miller and Karl Shucai, was indicted and convicted for the offense of breaking and entering in violation of N.J.S. 2A:94-1 and for larceny in violation of N.J.S. 2A:119-2. Defendant was sentenced to the New Jersey State Reformatory for males for an indeterminate term.
On appeal to this court Zito contends that (1) his arrest under the Disorderly Persons Act was illegal and therefore the items seized in a search incident thereto were inadmissible as evidence at his trial, (2) his confession was erroneously admitted in evidence because the State failed to establish that he voluntarily and knowingly waived the right to be represented by counsel, and (3) the Disorderly Persons Act offends due process of law by its creation of an impermissible presumption and, in any event, it is void for vagueness.
The trial judge believed the pretrial hearing testimony of the police officers which reveals the following. At 2:50 A.M. on October 10, 1966, defendant and his two co-defendants were seated in an automobile, owned by Shucai, which was parked on Prince Street in Paterson, across the street from Silvio Savastano's tavern. Savastano, being suspicious, as the car had been parked there about 45 minutes, notified the police. Upon their arrival, Savastano informed Sergeant Malzone that he recognized the men; they had been in his tavern the previous night and, after they had left, he discovered that the latch of the window in the washroom had been "tampered with." Malzone and Officer Santoro then approached the parked vehicle and, while the occupants were being questioned, Malzone noticed, in plain view, a pipe wrapped in black adhesive tape "resembling a club" on the floor of the automobile between the driver and the man "sitting in the middle."
*555 No response was given to the officers' questions concerning the pipe. When the men were asked to identify themselves, to explain "what they were doing there," they stated, "We're just sitting in the car." One of them remarked that they were waiting for two girls. It was also learned that defendant and Miller were on parole.
The officers ordered the occupants out of the car and advised them that they were under arrest on a disorderly persons charge. Upon an ensuing search a toy water gun was found in Shucai's pocket, and six boxes of new spark plugs and a large tool box containing mechanics' tools were discovered in the trunk of the car.
Defendant and his two companions were forthwith taken to police headquarters. At this point we note that within 24 hours prior to the arrest and search, the Prince Street Garage in Paterson was broken into and mechanics' tools and spark plugs were stolen. While in custody Zito was advised by Detective DiNardo that he was also under arrest on charges of breaking and entering and larceny at the aforesaid garage, the offenses for which the three men were subsequently indicted, tried and convicted.
The detective testified that before interrogation as to those charges he informed Zito as to his constitutional rights, including the rights to remain silent and to have the services of an attorney. According to DiNardo, defendant replied that he did not want an attorney and later made a voluntary confession as to his participation in the alleged crime; he also signed a waiver and written statement. The testimony of DiNardo was corroborated by Detective Rogers who was present during the interrogation. Both officers gave evidence that defendant was not threatened, promised or maltreated.
The contrary version of the three accused as to what transpired at the scene of apprehension and at police headquarters was not believed by the presiding judge who concluded that the officers, in the circumstances, had probable cause to make the arrest on a disorderly persons charge. There is no *556 evidence to support defendant's argument that the police made the arrest to legalize the search. The court found that the search was incident to a valid arrest and, accordingly, the joint motion of the defendants to suppress the tangible evidence, found as a result of the search, was denied. The taped pipe was held to be admissible in evidence since it was in plain view at the time of apprehension.
At the same pretrial hearing the evidence and arguments of counsel addressed to the voluntariness of Zito's confession were considered. The court recognized the conflict in the proffered testimony and decided on the facts presented that the State had sustained its burden of proof. It held that "defendant was warned of his full rights as set forth in Miranda [Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 94 (1966)] opinion," the oral inculpatory statement had been voluntarily given, and the right to counsel was expressly and effectively waived when defendant stated that he "did not want an attorney."
We are satisfied from our review of the record that the challenged rulings of the trial court are firmly supported by the evidence. The State adequately demonstrated that defendant voluntarily and knowingly waived his right to the assistance of counsel and that his oral confession, as well as the tangible evidence seized by the police, was properly admitted in evidence.
We turn now to the attack leveled at the validity of the Disorderly Persons Act (N.J.S. 2A:170-1) which provides:
"Any person who is apprehended and cannot give a good account of himself, * * * and who is in this state for an unlawful purpose, is a disorderly person. In any prosecution under this section the fact that the person apprehended cannot give a good account of himself * * * is prima facie evidence that he is present in this state for an unlawful purpose."
The argument that the statute creates an impermissible presumption of guilt is not persuasive. Plainly, the *557 failure to give a satisfactory explanation to a police officer may be a failure to give a good account of oneself, but such fact alone will not be sufficient to support a conviction. As stated in State v. Salerno, 27 N.J. 289 (1958):
"Usually provisions for a good account are associated with conduct or circumstances in themselves offensive or suggestive of an intent to commit a crime." (27 N.J., at p. 296)
Here there is a sufficient rational connection, under the Disorderly Persons Act, "between the fact proved and the ultimate fact presumed." McNeilly v. State, 119 N.J.L. 237, 242 (Sup. Ct. 1937). The statute shifts merely the burden of coming forward with the evidence and not the burden of proof. Compare Tot v. United States, 319 U.S. 463, 467, 63 S.Ct. 1241, 87 L.Ed. 1519, 1524 (1943).
It is also urged that the statute is void for vagueness under the Due Process Clause of the Fifth Amendment, and we are cited to United States v. Margeson, 259 F. Supp. 256 (E.D. Pa. 1966), wherein it was so held by reason of the words "give a good account of himself." This court, however, has declared that the holding in Margeson is not binding upon the judiciary in New Jersey. State v. Speciale, 96 N.J. Super. 1, 7 (App. Div. 1967), certif. denied 50 N.J. 291 (1967).
Similar statutes in other jurisdictions have been successfully invalidated, see e.g., Landry v. Daley, 280 F. Supp. 968 (N.D. Ill. 1968); Baker v. Bindner, 274 F. Supp. 658 (W.D. Ky. 1967); Alegata v. Commonwealth, Mass., 231 N.E.2d 201 (Sup. Jud. Ct. 1967). But see authorities in jurisdictions where such legislation has been upheld, e.g., Ricks v. United States, 228 A.2d 316 (D.C. Ct. App. 1967); People v. Merolla, 9 N.Y.2d 62, 211 N.Y.S.2d 155, 172 N.E.2d 541 (Ct. App. 1961), certiorari denied 365 U.S. 872, 81 S.Ct. 906, 5 L.Ed.2d 861 (1961). Note, Annotation, "Vagueness as Invalidating Statutes or Ordinances Dealing with Disorderly Persons or Conduct," 12 A.L.R.3d 1448, 1453 (1967).
*558 The constitutionality of the statute in question was considered in McNeilly v. State, supra. It was there contended that the act set forth no ascertainable standard of guilt, a contention which was deemed by our former Supreme Court to be based upon a misconception of the legislation since more is required than mere proof that the accused was unable to give a good account of himself. In its opinion the court observed that the statute "sets forth an additional fact which must be proved, namely, that the accused `be present in the state for an unlawful purpose.'" Id., 119 N.J.L., at p. 240. It was said, in declaring the enactment to be a valid exercise of police power and not vague:
"While the language of the act is broad, we do not share the opinion that it is either indefinite, uncertain or vague. On the contrary, we think the language of the act evinces a clear, definite and ascertainable standard of guilt * * *." (at pp. 240-241).
Our present Supreme Court discussed the statute in State v. Salerno, supra, and there made the comment that "the constitutional issues are formidable," but found it unnecessary in the factual complex of that litigation to reach those issues. 27 N.J., at p. 296. McNeilly, however, was not overruled and it still prevails as an authority to be recognized and followed by this court, and, in so doing, we hold that the Disorderly Persons Act (N.J.S. 2A:170-1) is not void for vagueness. We hold also that the statute is constitutional as applied to defendant. He had fair warning, within the pronouncements of State v. Moretti, et al., 52 N.J. 182, 192-193 (1968), that his conduct at the time of arrest was proscribed.
The judgment of conviction is affirmed.