Curia, per

Earle, J.
In the argument here, several questions have been raised and discussed, on the regularity of the proceedings of the Court, and on the sufficiency of the information, warrant, and conviction, in point of form. These points I do not regard as properly presented for consideration, on a motion for prohibition. The proceedings before *342 the Justices are required to be returned to the Circuit Court, to be filed away of record there. The conviction being summary before an inferior and limited jurisdiction, *a motion will be in order, to quash it for any sufficient cause apparent on the face of the proceedings, either for irregularity or insufficiency. I do not perceive that there is any objection to either, that ought to prevail. If the same technical precision and accuracy were required in the proceedings before Justices, that are necessary in indictments, the administration of criminal justice would be rendered almost impracticable. The principal ground of objection lies at the root of the whole proceeding, and assumes that the Act of the Legislature of 1836, under which it has arisen, is in violation of those parts of the Constitution which provide “that no man shall be deprived of his life, liberty or property, but by the judgment of his peers, or by the law of the land,” and that “the trial by jury, as heretofore used in this State, shall be forever inviolably preserved.”
This presents a very grave question, and the discussion of it, if equal to its importance, might occupy a great deal of time, and would afford employment for the greatest ability.
The 2d sect, of the 9th article of our State Constitution, part of which I have quoted, is drawn, as every one knows, from Magna Charta, adopted under King John, and subsequently confirmed by other princes, and lastly by Edward II.(a) In the construction of the words “law of the land,” it seems to be held in England, that the expression embraces the common law and the statute law down to the end of Edward 2d’s reign. By analogy, it has been held in this State, that the same terms used in our Constitution, must embrace the common law as then adopted here, and the statutes of Great Britain, and of this State, made of force, and in operation at that time. So the 6th sect, relative to the trial by jury, as heretofore used, taken in connection with the 2d, which secures trial by peers, would seem to imply that the institution of trial by jury was to be preserved and enjoyed according to the law of the land then known and in operation, I think it may well be questioned, whether the 6th article was intended to impose any further restriction on the Legislature, or to secure any larger right to the citizen, than the 2d section intended to secure. It cannot be supposed that inconsistent provisions on the same subject would be inserted in an instrument so carefully drawn and so fully considered.
The 2d section had already secured life, liberty and property, except by the judgment of peers, or by the law of the land. When the 6th section declares that the trial by jury, as heretofore used, shall be preserved, I suppose it meant only that it should continue to be used except where it was superceded or dispensed with by the “law of the land,” under the former section. In the construction of these words, it has been held, both in England and here, that they do not mean merely the common law and statutes, but that they recognize and embrace the proceedings of the various courts of ascertained jurisdiction, known to the law, “as the several matters determinable, summarily, by one or more *343 justices of the peace,” says *Dr. Sullivan, (2 Lect., 262;) and Waties’ Justice, in Zylstra’s case,(a) enumerating the exceptions to the trial per pares, includes “the courts of justices of the peace, because they are sanctioned by long use, and it may be said, by a popular adoption of them,” and for other considerations. A freeman, therefore, is not to be deprived of his life, liberty or property, but by the judgment of his peers, or by the law of the land ; that is to say, by the judgment of some competent judicial tribunal, known to the law, and proceeding upon some rule of action prescribed by the Legislature, according to the accustomed forms, or as Lord Coke has it “by due process of law.”
I cannot but think it would be too rigid a construction of the 6th section, concerning the trial by jury, to say that the Legislature can, in no case, in all time to come, confer upon such courts as have been referred to, as exceptions to trial per pares, any jurisdiction, in matters civil or criminal, which they had not at the adoption of the Constitution. I think it more liberal and sensible to construe the 6th in connection with the 2d section. That fundamental instrument should not be construed like a deed conveying an estate or granting a power. It is a political regulation, and should receive such interpretation as to secure the peace and good order of society, so far as is compatible with the liberty of the citizen.
We are led to inquire how stood the subject of vagrancy, at that time. Idle and disorderly persons, vagrants, are terms often occurring in the old statutes. They have been from time immemorial, in England, subject to the summary jurisdiction of justices of the peace. (Com. Dig. Justices; Burn’s Justice, Vagrants.) And by the Stat. 17 Geo. 2, ch. 5, no less than seventeen different classes or descriptions of persons are declared to be vagrants, who may be apprehended, tried in a summary manner, and on conviction, be imprisoned and whipped.
Our Act of 1787,(b) much less rigorous in its provisions, appears, nevertheless, to have been modelled on that of George II. It enumerates the various descriptions of persons who shall be deemed vagrants ; and it is obvious that its penalties are directed against all those idle and disorderly persons, who either have no visible means of living, or who pursue such means of gaining a livelihood as are dishonest, or subversive of the peace and good order of society. Among these are “ all who acquire a livelihood by gambling or horse-racing, without any other visible means. ” The mode of proceeding is prescribed ; and on conviction, the defendant is required to give security for good behaviour for twelve months, and on failure may be committed. A fair copy of the proceedings is required to be returned to the next Court, to be filed of record ; and if the Court shall not think fit to discharge the offender, he may be sold, or whipped, or put to hard labor.
The Act of 1836, under which this conviction has been made, enacts that if any person shall, within ten miles of the South Carolina College, keep or use any house for gaming, or keep or use any faro bank, or other ♦device for gaming, he shall be proceeded against as a vagrant, and on conviction, shall be deemed such, and be required to give security for good behaviour, and that he will not offend against the Act *344 for three years; and in default, to be proceeded against as in other cases of vagrancy. And it is urged that the Legislature cannot, at pleasure, make vagrants, by Act, of any class of persons, that whim or caprice may prompt; and this may be conceded without affecting the argument. Though, if vagrancy be in itself an offence, it would not be easy to prescribe a limit to the power of the Legislature, to subject any class of the vicious, idle and dangerous to its penalties. But in the Act of 1836, they have not departed from the enumerated classes in the Act of 1187, viz.:— all those who gain their livelihood by gambling or horse-racing, having no other means. In the Act of 1836, a person is subjected to the penalties cf the former Act, who gains his living, in part, by keeping a gambling house or faro bank in the vicinity of the College, without inquiry as to his other means of living. And it would seem, that the danger to the institution here, or the prejudice to the community at large, is just the same, whether the keeper of a gambling house or faro bank has other means of gaining a livelihood, or not, admitting that to be a vicious and dangerous one, within the scope of the Act of 1787.
It is objected that it is beyond the power of the Legislature to constitute this new class of vagrants, and authorize them to be proceeded against as such, under the provisions of the Act of 1787, because it deprives a man of his liberty without a trial by his peers ; because.the trial by jury is not preserved as heretofore used. I consider the Acts against vagrants, as they are embraced in those of 1787 and 1836, as highly beneficial ; and if carefully and rigidly enforced, that they would prevent much of the crime that is perpetrated in the country. If, however, they are violations of the constitutional rights of the citizen, I should be very unwilling to lend the aid of this court to enforce them. “The maxim then, is,” says Dr. Sullivan, “that no man shall be taken and committed to prison, but per judicium parium, vel per legem terrae.” 2 vol. Lect. 265. According to the interpretation which, I have endeavored to show, has been put upon those words, even iu connection with the 6th Section of the 9th Article, concerning trial by jury as heretofore used, can it be said, that a person charged under either Act, and carried before the court of justices for vagrancy, is taken and imprisoned otherwise than by the law of the land, or due process of law ? I cannot come to that conclusion ; the court which tries him is known to be the law of the land ; has been, from time immemorial, part of the law of the land; and its whole proceedings are by due process of law ascertained and established.
Here we naturally come to inquire, what are the true ends and purposes of the Acts against vagrants ? I think they have been imperfectly* understood, at least so far as relates to the jurisdiction and proceedings of the magistrates. I think it is not the main purpose of those Acts, to proceed by way of punishing for an offence; for vagrancy in itself, can hardly be deemed a distinct offence. The Acts seem rather intended to afford some adequate security to the public, against the danger to be apprehended from the several classes of persons enumerated, all of whom, from their want of honest employment, or from their vicious pursuits, may well be considered as dangerous to society. The proceeding at first, therefore, is merely inquisitorial, to ascertain the means of living, and the mode of life, of the suspected person ; and if it be found that he has no visible means of living, or pursues a vicious aud dishonest course *345 of life, then that the orderly and virtuous portion of the community shall liave some security against the depredations to be apprehended from such a character. This security is afforded by a recognizance for good behaviour, for twelve months, under the Act of 1787, and for three years, under the Act of 1836 ; or by confinement until the next Court, to which, also, the proceedings are required to be returned. The office of the justices here terminates.
See Sup., 72; Commissioners of New Town Cut vs. Seabrook, 2 Strob., 564; Crosby vs. Warren, 1 Rich., 385, 390. An.
Black, for the motion. Edward, Solicitor, contra.
In case the bond is given for good behaviour, the object to be attained is accomplished ; the security against apprehended mischief is afforded. If it be not given, the suspected person is turned over to the Court of Sessions. That Court, on looking into the proceedings and evidence, may discharge, if they are insufficient. Under the Act of 1836, the grave question would arise, whether, if the Court should not see fit to discharge, it would be authorized to sell the services of the persons charged, or to order him tobe whipped,or to be put to hard labor. These are the alternatives under the Act of 1787 ; and I think they have been generally practised on, although the same constitutional scruples have been often urged. Yet, it would seem not to be a violation of the right of trial by jury as heretofore used, for the Court, as before remarked, was a part of the law of the land, and the trial there, was always without jury. The question, whether, under the Act of 1836, the Court could proceed to act on the conviction of the justices, without further trial, does not necessarily arise here, and no opinion will lie expressed by the Court, It is a question which the Circuit Court must first decide for itself.
Supposing, however, under either Act, that the Court should feel itself fettered by the constitutional objection, or should not be disposed to adopt the rigorous alternatives provided in case the defendant has not given the security, there is another course witch may be pursued by the Court, in virtue of its general powers of criminal jurisdiction. The Court being in possession of all the evidence taken before the justices, if it should not see fit to discharge the offender, may order him to be indicted there for such offence as the evidence shows him to have committed, and bind him over for *his appearance, or commit him for trial. If no distinct offence be exhibited, the Court may still, if the evidence warrant it, require him, as a measure of precaution, to give security for his good behaviour, and on failure, commit him as a suspected person. If this view be correct, the Acts are divested of those features which are apt to be regarded as rigorous and oppressive. It follows, I think, that a proceeding for vagrancy, would not be barred by a prosecution pending in the Court of Sessions for gaming. If the security is given to the justices, there is an end of the proceeding ; for it is clear, that it is not meant as a punishment for the offence of gaming. The Act of 1836, seems to contemplate a prosecution for that offence separately, by mating a provision for increasing the costs.
The Court is of opinion that the Judge below was right to refuse the prohibition ; and the motion here, to reverse his decision, is dismissed.
Evans, Richardson, Johnson and Johnston, concurred.
Gantt, O’Neall and Butler, dissenting.

 3 Dess. Eq., 478; 2 Bail., 677; 1 Bay., 391; 1 Bur., 471; 2 Sp., 767; 5 Rich., 107, 115; 10 Rich., 440. An.

 1 Bay., 389. An.

 5 Stat., 41. An.