Argued September 13; reversed and remanded October 18;
petition for rehearing denied November 22, 1949

# CITY OF PORTLAND *v.* GOODWIN AND GOODWIN
## 210 P. 2d 577

*Alexander G. Brown,* City Attorney, and *J. Robert*

*Jordan,* Deputy City Attorney, both of Portland, argued the cause for appellant. With Alexander G. Brown on the brief were John F. Reynolds and Virgil H. Langtry, Deputy City Attorneys, of Portland.

*David M. Spiegel,* of Portland, argued the cause for respondents. On the brief were Lenske, Spiegel & Spiegel, Lenon & Lenon, Green, Landye & Peterson, and Donald S. Richardson, all of Portland.

Before BRAND, Acting Chief Justice, and ROSSMAN, BAILEY, HAY and PAGE, Justices.

BRAND, A. C. J.

The issue in this case involves the alleged unconstitutionality of an ordinance of the City of Portland which reads as follows:

"Between the hours of 1:00 and 5:00 o'clock A. M., Pacific Standard time, it shall be unlawful for any person to roam or be upon any street, alley or public place without having and disclosing a lawful purpose." Ordinance No. 76339, Section 16-617.

The defendants are husband and wife. Under the provisions of the ordinance each of them was charged by a complaint in the following language:

"The above named defendant on Sept. 2, 1947, within the corporate limits of the said City of Portland, did wilfully and unlawfully, between the hours of 1 o'clock A. M. and 5 o'clock A. M. Pacific Standard Time, to wit, 4 o'clock A. M., be upon a STREET, to wit, W. Burnside St. at N. W. 17th Avenue, without having and disclosing a lawful purpose."

After trial, upon a plea of "not guilty" each of the defendants was convicted and fined $25 in the municipal court. The defendants appealed to the circuit court where they filed general demurrers to the respective complaints upon the specified ground that they do not state facts sufficient to constitute a crime and that the ordinance is violative of the 14th amendment to the Constitution of The United States and of Sections 1, 20 and 33 of Article I of the constitution of Oregon. The demurrers were sustained and the cases were remanded to the municipal court with directions to dismiss upon the ground that the ordinance is invalid. The city appeals.

In their respective briefs both parties set forth the alleged facts concerning the conduct of the defendants and of the arresting officer, at, and prior to the arrest. All such statements by the parties will be disregarded because they are not based upon any record in this court. Evidence was taken in the municipal court, none in the circuit court and there is, of course, no bill of exceptions here. Our only question relates to the constitutionality of the quoted portion of the ordinance.

In discussing the ordinance our comments are limited to that portion thereof quoted supra and with which alone we are concerned. The defendants contend that the ordinance violates the due process clause of the federal constitution (a) "by being so vague as not to define a crime"; (b) "by making intent alone, without an overt act, a crime"; (c) "by finding a presumption of criminality in innocent acts"; (d) the ordinance violates the privileges and immunities clause of the 14th amendment "by abridging freedom of locomotion."

We will first take notice of certain general comments appearing in the defendant's brief. It is first asserted that the ordinance under attack is not a vagrancy ordinance. In support of that contention they cite the provision of the vagrancy ordinance which provides that: "(e) Any person who wanders about the streets at late or unusual hours of the night, without any visible or lawful business" is a vagrant. Defendants' brief continues:

"It will be apparent that this ordinance restates in greater detail the long established law regarding vagrancy. See Sec. 23-1310, O. C. L. A.

"Sub-sections (c) and (e) of the above ordinance apparently cover what appears upon its face to be the subject-matter of the ordinance under attack, but by having this ordinance on its books and at the same time making an attempt to keep the one under attack remaining there, appellant itself is necessarily asserting that these two ordinances accomplish two distinctly different objectives!"

■ We agree that the provision of the vagrancy ordinance which restates the "long established law" covers substantially the same material contained in the ordinance under attack, but we know of no reason or

authority which requires us to construe the two provisions as mutually exclusive merely because they are similar. Again the defendants argue that the ordinance under attack constitutes an authority to arrest upon suspicion. We agree that if the ordinance constitutes authority to arrest merely upon suspicion it would be invalid. *Stoutenburgh v. Frazier,* 16 D. C. App. 229, 48 L. R. A. 220. But we do not so construe the ordinance.

■ At the threshold of discussion we point out that violation of a municipal ordinance is not a crime. It is at most a public tort, quasi criminal in character. *State v. Crawford,* 58 Or. 116, 113 P. 440; *Triphonoff v. Sweeney,* 65 Or. 299, 130 P. 979; *Miller v. Hansen,* 126 Or. 297, 269 P. 864.

It is the position of the defendants that the ordinance is vague for indefiniteness. The general principle on which they rely is unquestioned. The difficulty is in its application. In *State v. Bailey,* 115 Or. 428, 432, 236 P. 1053, this court said:

> "A valid criminal law must definitely show with reasonable certainty what acts or omissions the lawmaking body intended to prohibit and punish: 1 Cyclopedia of Criminal Law, Brill, § 62. But reasonable definiteness in view of the conditions is all that is required * * * *".

■ A similar rule is laid down in numerous decisions which are cited by the defendants, including several from The United States Supreme Court. Those decisions are reviewed in *State v. Anthony,* 179 Or. 282, 169 P. 2d 587. Their authority is acknowledged and repetition is unnecessary. However, the rule construing indefinite statutes must be read in the light of

other rules also firmly established concerning the construction of statutes attacked as void for indefiniteness.

In *State v. Anthony* this court said:

"Notwithstanding the established rule that indefinite statutes are subject to condemnation under the 14th Amendment, it cannot be said that every statute containing broad and indefinite prohibitions is to be held unconstitutional as wanting in due process. A criminal statute passed pursuant to the police power should be stricken down for indefiniteness only if it cannot be saved wholly or in part by judicial application of the rules of statutory construction. The federal decisions are by no means uniform or consistent, but the trend has been strongly toward upholding statutes containing broad general provisions especially when their scope has been restricted by construction in the state courts prior to examination by the federal tribunal."

The rule of *State v. Anthony* was applied in *State v. Opie*, 179 Or. 187, 170 P. 2d 736. Many Oregon decisions support the following propositions: A statute is presumed to be supported by facts known to the legislative body, (*Amer. F. of L. et al. v. Bail et al.*, 165 Or. 183, 106 P. 2d 544, 130 A. L. R. 1278) and is presumed to be constitutional. (*Tompkins v. District Boundary Board*, 180 Or. 339, 177 P. 2d 416; *State v. Eaton et al.*, 119 Or. 613, 250 P. 233.) Courts will declare a statute invalid only if manifestly unreasonable and reasonableness is primarily a matter for the legislative judgment. (*State v. Kincaid*, 133 Or. 95, 285 P. 1105, 288 P. 1015.) Unconstitutionality must be established beyond reasonable doubt. (*State v. Bailey*, *supra*.) If an enactment can be given any reasonable interpretation consistent with its validity, such interpretation should be adopted. (*Gantenbein v. West*, 74

Or. 334, 144 P. 1171.) A statute will be held inapplicable in certain cases when it would be unconstitutional if held applicable. (*Leonard v. Ekwall*, 124 Or. 351, 264 P. 463.) Where a statute is susceptible of two constructions, one of which would render it constitutional and the other unconstitutional, the courts will adopt the former. (*Fox v. Galloway*, 174 Or. 339, 148 P. 2d 922.)

The defendants cite no case in which the courts have considered the validity of an ordinance framed in the precise terms employed in this case and we have found none. Analogies, however, are numerous. We will therefore consider the application of the foregoing rules to the facts of the pending case. The first element in the municipal offense defined by the ordinance is that it is an offense committed between the hours of one and five o'clock A. M. Secondly, it involves *roaming or being* upon a street, alley or public place. The complaints charge that the defendants "did wilfully and unlawfully * * * be upon a STREET". We think it was proper to charge that the offense was willful although willfulness is not expressly made an element of the offense. In *State v. Cox,* 91 Or. 518, 179 P. 575, Judge HARRIS in an able concurring opinion held that the word "knowingly" should be read into the statute as an implied element of the crime though the word was not found in the statute. It would be absurd to construe the ordinance in the case at bar as applying to one who was involuntarily on a street and we construe the words "be upon any street" as applying only to one who voluntarily and knowingly shall go and be upon a street. The overt act consists in placing himself upon a street during the prohibited hours. Any other construction would violate the rule

stated in *City of Portland v. Stevens,* 180 Or. 514, 178 P. 2d 175, where the court said:

" * * * The ordinance, however, should receive a sensible construction, and its terms should be so limited in application as not to lead to absurd or unjust consequences. It will be presumed that the lawmakers intended to except from its operation all actions the prohibition of which would be absurd."

The defendants assert that the ordinance makes intent alone, without any overt act, a crime. This contention was considered and rejected in *State v. Grenz,* 26 Wash. 2d 764, 175 P. 2d 633. In support of their contention the defendants cite *Ex parte Hudgins,* 86 W. Va. 526, 103 S. E. 327, 9 A. L. R. 1361, 1365. The statute in that case was a war measure limited to the duration plus six months. The offense was committed in 1920. The court held unconstitutional a provision which authorized fine and imprisonment of any able-bodied man between the ages of sixteen and sixty except students, who shall "fail or refuse to regularly and steadily engage in at least thirty-six hours a week in some recognized business". It was further provided that possession of property and income sufficient to enable a person to support himself and his dependents should not be a defense. Other regulations rendered the act still more onerous. The occupation in which one was required to labor was not so defined as to have any bearing on the security or productivity of the state. If he painted pictures for the required number of hours he would be innocent. The next case cited by defendants is *People v. Belcastro,* 356 Ill. 144, 190 N. E. 301, 92 A. L. R. 1223. The statute provided that one might be punished if he was reputed to be

an habitual violator or carrier of concealed weapons, etc. The court said:

> " * * * the amendment to the Vagrancy Act as above quoted is unconstitutional, as it seeks to punish an individual for what he is reputed to be, regardless of what he actually is. * * * "

The case was distinguished in *Morgan v. Commonwealth*, 168 Va. 731, 191 S. E. 791, 111 A. L. R. 62.

The last case cited on this point is *Stoutenburgh v. Frazier*, supra. In that case the defendant was charged only with being a suspicious person, under an act of congress providing that all suspicious persons shall upon conviction thereof be punished. In each of the three cases cited the statute authorizes the conviction for crime although the defendant did nothing and did it innocuously. They are not in point here.

In the case at bar the trial court expressed the opinion that the words "lawful purpose" are vague, indefinite and confusing, and concluded that "having a lawful purpose means nothing at all". We are unable to conceive of a sane person roaming or being upon the street late at night without some purpose though it may be only for the purpose of going to or from his home or walking in the fresh air. If we are to assume that one could go on the street at night having no purpose at all, we are inclined to believe that it would be within the police power to regulate his conduct for his own protection, but we will not pass upon that question until some purposeless person raises it. We take it that if a person has any purpose at all in going upon the street at night it must be either a lawful or an unlawful one. The words "without having * * * a lawful purpose" are the exact equivalent of the words "having an unlawful purpose".

Statutes which make the absence of lawful purpose or the presence of an unlawful purpose an element of a statutory offense are many, and the constitutionality of such enactments has been repeatedly upheld. Among Oregon statutes of this kind are: O. C. L. A., § 23-801 (intent to do an unlawful act); O. C. L. A., § 23-805 (disturbing a meeting held for a lawful purpose); O. C. L. A., § 23-1057 (threats to compel another to join or refrain from joining a lawful organization).

In *McNeilly v. State,* 119 N. J. L. 237, 195 A. 725, the court in affirming a conviction said:

"The act of 1936, supra, requiring, as it does, proof of the fact that the accused is unable 'to give a good account of himself'; and proof of the further fact that the accused 'is present in this State for an unlawful purpose'; is a valid exercise of the police power of the state. It is well within the 'large measure of discretion' inherent in the Legislature 'in creating and defining criminal offenses.' Levine v. State, 110 N. J. L. 467, 469, 470, 166 A. 300, 302, Err. & App. While the language of the act is broad, we do not share the opinion that it is either indefinite, uncertain, or vague. On the contrary, we think the language of the act evinces a clear, definite, and ascertainable standard of guilt—inability of accused to give a good account of himself and his presence in the state for an unlawful purpose—applicable alike to all who may come under its provisions. For historic review of the language used, read page 914 of 162 A., page 1160 of 10 N. J. Misc. of the Archer Case. The act of 1936, supra, is neither arbitrary nor unreasonable. We discern in the act a clear legislative intent to nip crime in the beginning."

In *State v. Grenz,* supra, the court said:

"* * * Under the statute in question, it was necessary for the state to prove beyond a reasonable

doubt that the appellant wandered about the streets at a late or unusual hour of the night without any visible or lawful business.  *   *   *

" *   *   * 'By subdivision 6 of section 647, Penal Code, one of the definitions of a vagrant is: "Every person who wanders about the streets at late or unusual hours of the night without any visible or lawful business." As we construe this subdivision, the words, "visible or lawful business" must be held as referring to the reason why such person is roaming the streets, rather than any business or avocation in life from which support is derived. In other words, the offense is complete under subdivision 6 if, without good or sufficient reason, one roams at late or unsual hours of the night, *and he is a vagrant without any reference to his means of livelihood or vocation.'*

" *   *   *

" *   *   * The obvious intent of the legislature in enacting subdivision 8 of the vagrancy statute was to enable law enforcement officers to keep the streets clear, at late and unusual hours of the night, of those persons who, by reason of being bent upon serious mischief, theft, or burglary, have no visible or lawful business or mission in the locality."

In *Ex parte Cutler,* 1 Cal. A. 2d 273, 36 P. 2d 441, the defendant was convicted of roaming about from place to place without any lawful business. The court said:

" *   *   * In subdivision 3, roaming is qualified by the language 'without any lawful business.' As thus qualified, we think that the individual who declares that his right to go and come as he chooses is unduly hampered thereby has small ground of complaint. If he is moved by the demands of some lawful business, he is not amenable to the charge of vagrancy because of his roaming proclivities. We apprehend also that the qualification would not receive too strained a construction. The particular

subdivision of the statute which is being here considered was evidently enacted to curb the wandering propensities of individuals who might offer a menace to the peace and well-being of society in any locality whereto they might repair.''

In *People v. Pieri,* 269 N. Y. 315, 199 N. E. 495, the statute provided:

" * * * 'Any person who with intent to provoke a breach of the peace, or whereby a breach of the peace may be occasioned, commits any of the following acts shall be deemed to have committed the offense of disorderly conduct: * * *

" 'Who bears an evil reputation and with an unlawful purpose consorts with thieves and criminals * * *

" * * *

"Here then is the crime. If a person of bad reputation, with intent to provoke a breach of the peace, keeps company with criminals, makes them his associates, for an unlawful purpose, he is guilty of disorderly conduct. Nothing unconstitutional about such a statute. There may be difficulty in finding the evidence or in proving the case, but when proved, an offense is committed not unlike 'vagrancy,' which has been in the statute books for many a day. Code Cr. Proc. § 887, subd 10. It is an attempt to prevent crime by disrupting and scattering the breeding spot.''

After distinguishing other cases, the court continued:

" * * * Suspicion does not establish guilt. But when we have a person of bad repute in close association and companionship with criminals and thieves, for an unlawful purpose and with intent to breach the peace, we have a set of facts much stronger and more definite than anything in the above cases.

"We think these elements comply with the rule

that criminal statutes should have a clear meaning and purpose and should not be doubtful and uncertain. * * * "

*State v. Hall,* 25 N. J. Misc. 381, 52 A. 2d 845, involved a New Jersey statute which provided that:

" * * * any person who shall 'be apprehended * * * who cannot give a good account of himself * * * and who is in this state for an unlawful purpose, shall be adjudged a disorderly person. * * *' "

The ordinance was held valid and the conviction was affirmed.

In *State v. Bulot,* 175 La. 21, 142 S. 787, the court said:

"Counsel for relators argue that the act is too vague and indefinite, in that the terms 'unlawfully assemble' and 'unlawful purpose' are not defined with any degree of legal certainty * * *

" * * * The word 'unlawful' means that which is not lawful or that which is contrary to some express provision of the law. The terms 'unlawfully assemble' and 'unlawful purpose,' as here used, mean to assemble for the purpose of doing some act or thing which the law prohibits. So that, in order to determine whether a number of persons assemble for an unlawful purpose, it would be necessary to determine, first, what the purpose of the assembly was; and, second, whether the act intended to be done is prohibited by law. A reference to the statutes of the state would enable the court to determine whether the purpose of the assembly was lawful or unlawful. We think the statute is not amenable to this particular objection."

A California statute employed the words "unlawful method of terrorism". The court said:

" * * * If any difficulty arises in the interpretation of the statute, and it becomes necessary

to ascertain the meaning of those words, the decisions and Code provisions contain numerous passages to assist the courts, and there is no constitutional requirement that such rules be provided within the bounds of each particular statutory enactment. State v. Hennessy, supra." People v. Wieler, 55 Cal. A. 687, 204 P. 410.

■ We conclude that the words "lawful purpose" are not so indefinite as to invalidate the ordinance.

■ We come next to the clause of the ordinance "without having and disclosing a lawful purpose". The word "disclose" as here employed means to cause to appear, to reveal. (Webster's New International Dictionary.) The test set up by the ordinance is whether the person by his conduct or words disclosed a lawful purpose. If he did, he has committed no offense. If he voluntarily went upon the street in the small hours of the night, and by his conduct or words disclosed an unlawful purpose, then he did an act which is prohibited by the ordinance. The ordinance as we construe it places no burden of proof upon a defendant. The city must establish proof beyond a reasonable doubt and by evidence presented at the trial. His conduct or conversation properly observed will disclose whether his purpose be lawful or unlawful, for the ordinance is dealing with disclosed purposes, not with those secretly entertained.

It must be remembered that we are not trying alleged practices of the police department concerning which there is no evidence in this case. The construction placed upon the ordinance by the lower court is indicated by the following quotation from its opinion:

" * * * To whom must he disclose such purpose? And once he discloses his purpose, who is to judge whether it is lawful or unlawful?

"The questions themselves suggest the answers. He must disclose his purpose to the person or persons accosting and detaining him, the police. And it is the police that at the time determine whether or not such disclosed purpose is lawful or unlawful. If they determine it is lawful, the person is permitted to go his way; if they determine it is unlawful, he is arrested and taken to jail."

■ The construction suggested it untenable. The duty imposed upon a police officer under the ordinance is a difficult one. If he arrests one having and disclosing a lawful purpose, he is guilty of a wrongful arrest. In cases of this kind the ultimate issues tried by the court in determining the guilt or innocence of the arrested person, are identical to the issues which determine whether or not the arrest was lawful, because an officer has no right to arrest without a warrant unless an offense is committed in his presence. The policeman does not determine the issue of guilt or innocence in cases of this kind any more than he does in arresting a person for any other offense alleged to have been committed in his presence. The situation of the arresting officer and of the person arrested is well illustrated by the remarks of Holmes, J., speaking for the court in *Nash v. United States,* 229 U. S. 373, 57 L. ed. 1232. In passing upon the validity of the criminal features of the Sherman Act he said:

"* * * And thereupon it is said that the crime thus defined by the statute contains in its definition an element of degree as to which estimates may differ, with the result that a man might find himself in prison because his honest judgment did not anticipate that a jury of less competent men. The kindred proposition that 'criminality of an act cannot depend upon whether a jury may think it reasonable or unreasonable. There must be some definite-

ness and certainty,' is cited from the late Mr. Justice Brewer, sitting in the circuit court. Tozer v. United States, 4 Inters. Com. Rep. 245, 52 Fed. 917, 919.

"But, apart from the common law as to the restraint of trade thus taken up by the statute, the law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree. If his judgment is wrong, not only may he incur a fine or a short imprisonment, as here; he may incure the penalty of death. *  *  * ''

▮ The guilt of the defendant and the legality of the arrest are none the less matters for the decision of the court, though the defendant or the officer may have acted upon conclusions believed reasonable before the court found otherwise. The remedy of a person illegally arrested is suggested in *Pinkerton v. Verberg,* 78 Mich. 573, 44 N. W. 579, 7 L. R. A. 507. The defendants construe the words "without  *  *  * lawful purpose" as meaning "without a lawful (to the officer) purpose". If the ordinance means that the legality of a person's action depends upon the opinion of a policeman, it would be unconstitutional, but there is no justification for so strained a construction.

▮ There is nothing inherently unconstitutional in a statute requiring a person to identify himself or to make a report to an officer in a proper case. Typical of such statutes are those requiring a motorist to identify himself and report to the authorities after an automobile collision, even a non-negligent one. *Ule v. State,* 208 Ind. 255, 194 N. E. 140, 101 A. L. R. 903. But we find nothing in the ordinance here which would authorize conviction merely because the interrogated person refused to answer. In the defendant's brief we read

the following concerning the right of interrogation and the duty to answer:

" * * * We are not here concerned with the right of police officers to stop and question citizens, or with their right to arrest if such questioning discloses a known crime. As appellant points out, these are matters which law-abiding citizens will recognize as reasonable for law enforcement, and with regard to which they will in most instances cooperate. What respondents question is not the police officer's right to do those things, but the City's right to call it a punishable crime when he does and the citizen fails to answer to the officer's satisfaction, when the standards of compliance are nowhere defined."

We concur in the view of law-abiding citizens which recognizes such matters as reasonable for law enforcement. We disagree with the assertion that the ordinance makes it punishable if one fails to answer "to the officer's satisfaction". The right and duty of officers to make inquiry of persons on the street, for the purpose of identification and the like, is upheld. *State v. Zupan*, 155 Wash. 80, 283 P. 671; *Ex parte Kneedler*, 243 Mo. 632, 147 S. W. 983; *State v. Hatfield*, 112 W. Va. 424, 164 S. E. 518; *Hargus v. State*, 58 Okla. Cr. R. 301, 54 P. 2d 211. The ordinance does not violate the privileges and immunities clause of the 14th amendment to the federal constitution. *Pinkerton v. Verberg*, supra, approves the right of a person to go where he pleases "only so far restrained as the rights of others may make it necessary for the welfare of all other citizens". We agree. In that case a woman was arrested, having committed no breach of the peace, and simply upon suspicion. In *Commonwealth v. Doe*, 109 Pa. Super. 187, 167 A. 241, an officer attempted to stop a man who had committed no crime in the sight of the

officer. It was held that the defendant had the right to push the officer aside and was guilty of no assault in so doing. The court said: "Freedom of locomotion, although subject to proper restrictions, is included in the 'liberty' guaranteed by our Constitution". In *Ex parte McCarver*, 39 Tex. Cr. R. 448, 73 A. S. R. 946, the court held invalid a nine o'clock curfew ordinance which prohibited any person under twenty-one years of age from being upon the streets unless accompanied by parent or guardian. The ordinance was construed as prohibiting legitimate errands or necessary business. It was held to be an undue invasion of personal liberty. The case is easily distinguishable. In *Terr. v. Anduha*, 31 Haw. 459, an act was held invalid which prohibited habitual loafing on the street. The court observed "that visitors lured by the fame of our climate and of our natural scenery" are often harmlessly idle. The right to regulate the use of the streets was recognized, but it was held that a person has the right to loaf in Hawaii providing he conducts himself in peaceful and orderly manner. This case is also distinguishable. *Guidoni v. Wheeler*, 230 Fed. 93, is also cited and is in point but it is against the defendants' position. None of the other cases cited bear upon this issue.

█ Issues of this character cannot be considered in a vacuum. The real question is whether an ordinance such as this bears a sufficiently close relation to the peace, safety and welfare of the public so far as to justify the inconvenience to which law-abiding citizens may occasionally be subjected. As said in *Ule v. State*, supra, concerning another constitutional provision, the great purpose of the 14th amendment is "liberty under the protection of effective government, not the destruction of the latter by depriving it of essential powers". That crimes of lust and violence are gen-

erally committed under the cloak of darkness is judicially known. We find that the ordinance bears a reasonable relation to the evil at which it is directed. It need hardly be said that it is the duty of police to act only in cases within the clear intent of the ordinance and of the municipal court to restrain, and if necessary to punish any abuse.

The order of the circuit court sustaining the demurrer to the respective complaints is reversed and the causes are remanded for further proceedings consistent with this opinion.

ON PETITION FOR REHEARING.

*David M. Spiegel* and *Harlow F. Lenon*, of Portland, for respondents, for the petition.

*Alexander G. Brown*, City Attorney, and *John F. Reynolds* and *Virgil H. Langtry*, Deputy City Attorneys, all of Portland, for appellant, contra.

BRAND, J.

Defendants appear to construe our opinion as holding that the mere act of placing one's self on the street constitutes "an overt act authorizing arrest". The opinion taken as a whole implies nothing of the sort. The overt act which violates the ordinance and thus authorizes arrest is the willful act of going upon the street during the prohibited hours and then and there manifesting by conduct an unlawful purpose.

A person complies with the ordinance if in going upon the street he has and discloses a lawful purpose. The use of the streets for the purpose of going to or from points within the city or for the mere purpose

of walking for exercise or for merely social purposes, is a lawful use whether in daytime or nighttime. And such use of the streets is for a lawful purpose. He goes upon the street as an innocent man entitled to the presumption of innocence and he need take no affirmative action to demonstrate his innocence. The lawfulness of his purpose is disclosed by his use of the streets for the purposes for which they were established. He must be deemed innocent unless his voluntary conduct overcomes the apparent and presumed innocence of his movements by disclosing a purpose to violate some law other than the ordinance in question.

This is the view which we attempted to express in our original opinion. Thus construed the ordinance is supported by authority and violates no constitutional provision.

The petition for rehearing is denied.