STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. ALFREDO SALERNO, DEFENDANT-APPELLANT.

Argued April 21, 1958—Decided June 9, 1958.

Mr. *Clive S. Cummis* argued the cause for defendant-appellant (*Messrs. Cummis & Kroner,* attorneys; *Mr. Clive S. Cummis,* of counsel).

Mr. *C. William Caruso,* Special Legal Assistant Prosecutor, argued the cause for plaintiff-respondent (*Mr. Charles V. Webb, Jr.,* Essex County Prosecutor, attorney; *Mr. C. William Caruso,* of counsel, on the brief).

The opinion of the court was delivered by

WEINTRAUB, C. J.   Defendant was convicted in the Municipal Court of the City of Newark upon a complaint which charged that "on the 5 day of June 1957, in the City of Newark, County of Essex and State of New Jersey, [he] did fail to give a good account of himself, after being apprehended, and was in this State for an unlawful purpose. In violation of *N. J. S.* 2*A* :170–1." He was sentenced to one year's imprisonment (six months in custody and balance

on probation) and fined \$500. Upon a trial *de novo* of the appeal to the County Court, he was again convicted, and sentenced to six months and fined \$500. We certified his further appeal upon our own motion before consideration of it by the Appellate Division.

On the evening of June 5, 1957 (it was dark), police officers apprehended one John Tamburello while he was engaged in transferring cans of alcohol from a large truck to a smaller one on a vacant lot, 8 Bruen Street, Newark. The trucks were backed, bumper to bumper, the larger truck containing 111 5-gallon cans and the smaller, to which the transfer was being made, containing 24 such cans. Tamburello was arrested. The officers hid, anticipating further quarry. Defendant drove by, made a U-turn, parked his car opposite the lot, looked up and down Bruen Street, opened the gate of the cyclone fence, walked toward the truck, and was seized, quite prematurely, when he was five feet from the truck. In answer to the queries of the officers, he gave his name and explained that he entered the lot to move his bowels. A search of defendant revealed a slip of paper containing names, locations and numbers, which defendant declined to explain. He was taken to headquarters, where he refused to answer any questions.

Before the County Court it was stipulated that the "liquid found on the premises in the truck was alcohol." There was no evidence or stipulation of any illegality with respect to the alcohol. Defendant sought to explain his presence on the lot and the slip of paper. The court found his testimony to be wholly unbelievable, a finding which was clearly warranted. The court concluded that defendant "failed to give a good account of himself at the time he was apprehended and was in this State for an unlawful purpose * * * he was associated in some way, in some manner, with the alcohol found on the premises."

Defendant testified without contradiction that he is a resident of East Hanover, New Jersey, and earns \$250 a week as supervisor of the Greenwood Swim Club, in which he is financially interested.

Defendant challenges the validity and applicability of the statute and the sufficiency of the proof.

## I.

The statute is the first paragraph of *N. J. S.* 2*A* :170–1 which reads:

"Any person who is apprehended and cannot give a good account of himself, or who is engaged in an illegal occupation and who is in this state for an unlawful purpose, is a disorderly person. In any prosecution under this section the fact that the person apprehended cannot give a good account of himself or is engaged in an illegal occupation is *prima facie* evidence that he is present in this state for an unlawful purpose."

As it now stands the statute might be read not to require proof that one "who is apprehended and cannot give a good account of himself" is "in this state for an unlawful purpose." We are satisfied that the element last mentioned is an essential ingredient of the offense, as the State in fact assumed in the present prosecution. To demonstrate that this is so, it is necessary to refer to the history of the measure.

The forerunner of the statute was *chapter* 280 of the *Laws of* 1933. In the following year, *Assembly No.* 207 was introduced as an amendment of the 1933 act, but in its final form it emerged as an independent supplement to the disorderly persons act and was enacted as *chapter* 133 of the *Laws of* 1934. (In the *Revision of* 1937, the 1933 act was deemed to have been "superseded," presumably by the 1934 act). The 1934 act contained no reference to an unlawful purpose. In 1936, *chapter* 18 was enacted to amend the 1934 statute to read:

"(a) Any person who shall be apprehended either on foot or in any automobile, vehicle or public conveyance, who cannot give a good account of himself, or who is engaged in an illegal occupation and who is in this State for an unlawful purpose, shall be deemed and adjudged to be a disorderly person.

In any prosecution under this section the fact that the person apprehended cannot give a good account of himself or is engaged

in an illegal occupation shall be *prima facie* evidence that he is present in this State for an unlawful purpose."

The first paragraph just quoted was further amended by *chapter* 166 of the same year to delete the comma after "himself" and to insert a comma after "occupation," the Statement accompanying the bill explaining that "through inadvertence a comma was misplaced in the act to which this act is an amendment, which may result in a doubtful construction of said act." The amendment made it clear that in addition to apprehension and failure to give a good account, it must be proved that the accused is "in this state for an unlawful purpose." However in the *Revision of 1937*, the shift of the comma was overlooked, and hence *R. S.* 2:202–16 followed *chapter* 18 of the *Laws of 1936* rather than *chapter* 166. And in the *Revision of 1951*, the same mistake was continued in *N. J. S.* 2A:170–1 (and in addition there was a rephrasing which literally would dissociate "apprehended" from "who is engaged in an illegal occupation"—a change which does not concern us in this case).

We are satisfied that the revisions were not intended to and did not accomplish a change in the statutory definition of the offense here involved, *Crater v. County of Somerset*, 123 *N. J. L.* 407, 414 (*E. & A.* 1939), and hence it remains essential that the accused be "in this state for an unlawful purpose." The statute has been so construed since the revisions. *Carroll v. First Criminal Court of Jersey City*, 129 *N. J. L.* 416 (*Sup. Ct.* 1943), affirmed *State v. Carroll*, 130 *N. J. L.* 559 (*E. & A.* 1943); *State v. Catalano*, 30 *N. J. Super.* 343 (*App. Div.* 1954).

## II.

The statute is an offshoot of the traditional vagrancy acts of which *N. J. S.* 2A:170–4, dealing with beggars and idlers, is quite typical. Modern additions to the vagrancy law seek to cope with the professional criminal by proscribing conduct indicative of a probable purpose to violate

the law, thereby "to nip crime in the beginning." *McNeilly v. State,* 119 *N. J. L.* 237, 241 (*Sup. Ct.* 1937); *Levine v. State,* 110 *N. J. L.* 467, 470 (*E. & A.* 1933). For a survey, see *A Public Enemy Law for New York,* 17 *N. Y. Legislative Documents* (158*th Sess.* 1935), *Document No.* 60 (K).

Defendant argues that under the statute a citizen may be stopped anywhere, anytime, under innocuous circumstances, and if he fails to satisfy the police officer, that single fact could suffice to support a conviction. There are two phases to the challenge. The first disputes the power of the State to require that a good account be given upon the mere demand of a law enforcement officer under any and all circumstances. The second, also grounded in due process, is that it is arbitrary to ordain that "the fact that the person apprehended cannot give a good account of himself * * * is *prima facie* evidence that he is present in this state for an unlawful purpose." The contention is that there is no rational connection in common experience between the fact proved and the ultimate fact presumed, and hence a violation of the doctrine of *Tot v. United States,* 319 *U. S.* 463 (1943). See 4 *Wigmore, Evidence* (3*d ed.* 1940), § 1356, *p.* 724; *McCormick, "The Validity of Statutory Presumptions of Crime Under the Federal Constitution,"* 22 *Tex. L. Rev.* 75 (1943); *Note, "Constitutionality of Rebuttable Statutory Presumptions,"* 55 *Col. L. Rev.* 527 (1955); *Note, "Use of Vagrancy-Type Laws for Arrest and Detention of Suspicious Persons,"* 59 *Yale L. J.* 1351 (1950); *Annotations,* 162 *A. L. R.* 495 (1946), 86 *A. L. R.* 179 (1933); 51 *A. L. R.* 1139 (1927). The second contention was rejected by the former Supreme Court in *McNeilly v. State, supra,* 119 *N. J. L.* 237, but the cause was not carried to the Court of Errors and Appeals.

Generally speaking, it is not necessarily arbitrary to call upon a defendant in a criminal case to offer an explanation, and this is evident from the proposition that the Legislature may provide that proof of one fact shall be *prima facie* evidence of another if there is a rational con-

nection in common experience. Thus, for example, *N. J. S.* 2*A* :139–1 provides that possession of stolen property within one year after the theft shall be sufficient evidence to authorize conviction of the crime of receiving unless the accused shows the acquisition was innocent. *State v. Lisena,* 129 *N. J. L.* 569 (*Sup. Ct.* 1943), affirmed 131 *N. J. L.* 39 (*E. & A.* 1943) ; *State v. Giordano,* 121 *N. J. L.* 469 (*Sup. Ct.* 1939). And the ancient vagrancy act, *N. J. S.* 2*A* :170–4, relating to beggars and idlers, penalizes the offender if he "does not give a good account of himself." In the latter situation, the quoted phrase perhaps is essentially a safety measure to protect the innocent whose behavior would otherwise fall within the interdicted conduct. Usually provisions for a good account are associated with conduct or circumstances in themselves offensive or suggestive of an intent to commit a crime. See *Benton v. United States,* 98 *U. S. App. D. C.* 84, 232 *F. 2d* 341 (*D. C. Cir.* 1956) ; *Harris v. District of Columbia,* 132 *A. 2d* 152 (*Mun. Ct. App. D. C.* 1957) ; *City of Portland v. Goodwin,* 187 *Or.* 409, 210 *P. 2d* 577 (*Sup. Ct.* 1949).

Here, defendant says, the requirement for a good account is not connected with any such overt act or conduct and the failure to give a good account is enough under the statute to originate the difficulty of an accused. In *McNeilly, supra,* the court expressed the view that if the statute required no proof beyond inability to give a good account, it would be unconstitutional. 119 *N. J. L.* at *page* 240. It found the additional requirement that defendant be present in the State for an unlawful purpose satisfied organic law.

The constitutional issues are formidable. Ordinarily we should not undertake to resolve a constitutional challenge if the litigation may be disposed of without reaching the fundamental issue, and since, as about to be stated, the judgment must be reversed for another reason, we should follow that course. It is also unnecessary for the same reason to consider defendant's other contention that the statute applies only to nonresidents, with respect to which he relies upon the language of the act, "in this state for an unlawful

purpose," and the Statements which accompanied the bills enacted as *chapter* 133 of the *Laws of* 1934 and *chapter* 18 of the *Laws of* 1936. We note in passing that in fact the statute has been invoked against residents. *State v. Catalano, supra,* 30 *N. J. Super.* 343; *Carroll v. First Criminal Court of Jersey City, supra,* 129 *N. J. L.* 416; *State v. Hall,* 25 *N. J. Misc.* 381 (*Sp. Sess.* 1947).

The conviction must be set aside because of the absence of evidence of an unlawful purpose. The statute could not reasonably be construed to mean that the trier of the facts may find merely that an accused was motivated by some indeterminable unlawful purpose. Rather, it requires that there be a purpose to engage in a specific unlawful activity. *Cf. State v. Catalano, supra,* 30 *N. J. Super.* 343. Despite the incredible explanation of defendant, the record is barren of evidence of a specific unlawful objective. The trial court concluded that defendant was associated in some way with the alcohol, an inference the evidence would well warrant. But absent was any proof that the alcohol was in any respect tainted with illegality or part of an illegal operation. We share the suspicions of the prosecution, but the failure to prove what one suspects leaves us with no course but to set aside the conviction. *State v. Campisi,* 23 *N. J.* 513 (1957).

The judgment is accordingly reversed.

WACHENFELD, J., concurring in result.

*For reversal*—Chief Justice WEINTRAUB, and Justices HEHER, WACHENFELD, BURLING, FRANCIS and PROCTOR—6.

*For affirmance*—None.