## No. 19,421.

BENITO DOMINGUEZ, JR. *v.* CITY AND COUNTY OF DENVER.

(363 P. [2d] 661)

Decided July 10, 1961.

234

Messrs. MELLMAN, MELLMAN AND THORN, for plaintiff in error.

Mr. DONALD E. KELLEY, Mr. JAMES P. MCGRUDER, for defendant in error.

*En Banc.*

MR. JUSTICE FRANTZ delivered the opinion of the Court.

THE conviction of Dominguez as a vagrant in violation of an ordinance of Denver is impugned by writ of error. It is contended that the ordinance (1) "is so vague, ambiguous and uncertain as to be inoperative," (2) "fails to provide any standard for the determination of who might come within its purview and fails to apprise a defendant as to what conduct is * * * unlawful," (3) improperly places the burden "upon the defendant to prove his innocence," (4) requires the accused to give a satisfactory account of himself in violation of provisions of federal and state constitutions, (5) violates the due process clauses of the federal and state constitutions, and (6) involves a matter of statewide concern to which the state has addressed itself by the enactment of a preemptive statute.

The alpha and omega of this controversy is the validity of that portion of the vagrancy ordinance reading as follows:

"*Vagrancy.* It shall be unlawful for any person to have the status or condition of or to be a vagrant in the

City and County of Denver. The following persons shall be deemed vagrants:

\* \* \*

"824.1-7. Any person who wanders about the streets, alleys, or other public ways or places, or who is found abroad at late or unusual hours of the night without any visible or lawful business and not giving a satisfactory account of himself."

The statute which it is said monopolizes legislative action on vagrancy is C.R.S. '53, 40-8-20, which provides:

"Any person able to work and support himself in some honest and respectable calling, who shall be found loitering or strolling about, frequenting public places, or where liquor is sold, begging or leading an idle, immoral or profligate course of life, or not having any visible means of support, shall be deemed a vagrant, and may be arrested \* \* \* "

Denver parries the contention of preemption by asserting a delegated authority to act in the premises by virtue of C.R.S. '53, 139-32-1 (57), to-wit:

"The governing bodies in cities and towns shall have the following powers:

\* \* \*

"(57) *Vagrants and prostitutes.* To restrain and punish vagrants, mendicants and prostitutes."

To this theory of delegated authority Dominguez counters that the attempted exercise thereof is such a radical departure from the statutory crime of vagrancy that the ordinance cannot be sustained. Delegation extends only to the enactment of an ordinance similar to the statute.

In the course of his argument, Dominguez cites as support for invalidation of the ordinance certain sections of Article II of the Constitution of Colorado. He relies upon Section 3, which affirms that "all persons have certain natural, essential and inalienable rights," among which is the right of locomotion; Section 16, which requires that the accused be advised "the nature and the cause of the

accusation" made against him; Section 18, which protects against compulsory self-incrimination; and Section 25, which forbids deprivation of life, liberty or property without due process of law. He also invokes the due process clause of the 14th Amendment to the Federal Constitution.

The case originated in the Municipal Court of the City and County of Denver, where Dominguez suffered a judgment of conviction. Appealed to the Superior Court of the City and County of Denver, the case was submitted there upon an Agreed Statement of Facts. Conviction again resulted.

A part of the Agreed Statement of Facts reads:

"The City's only witness, Officer Wiley of the Denver Police Department, testified that on December 5, 1958, at approximately 3:00 A.M., the defendant was seen at 2124 Larimer Street in front of the La Bonita Cafe in an automobile.

"He testified over defendant's objection that the defendant ran from the car to another location, and over defendant's objection that the window of the car had been broken.

"He further testified over the defendant's objection that while the defendant was running he dropped a frozen chicken and that the defendant was arrested a few blocks from the scene of the alleged violation.

"He testified that when the defendant was asked why he was running he first said he was just running, but later said he was running to his girl's house."

As the ordinance under study expressly recognizes, vagrancy is a crime of condition or status. *Benton v. United States,* 232 F. (2d) 341; *Titus v. State,* 97 Tex. Cr. 444, 261 S.W. 1029; Lacey, Vagrancy and Other Crimes of Personal Condition, 66 Harv. L. Rev. 1203 (1953). So understood, vagrancy is an important nidus for criminal activity. *Ex parte Branch,* 234 Mo. 466, 137 S.W. 886. Hence, measures to cope with vagrancy have as their purpose the safety and good order of the com-

munity, by seeking to nip crime in one of its formative settings. *Welch v. City of Cleveland,* 97 Oh. St. 311, 120 N.E. 206; *State v. Maxcy,* 26 S.C.L. 501. Viewed thus, vagrancy laws find sanction in the exercise of the police power. *Ex parte Hayden,* 12 Calif. App. 145, 106 Pac. 893.

It is said that the ordinance is too vague; that neither citizen nor judge is afforded guide or compass by which to know how its violation is effected or avoided; that it is without standards to aid citizen, judge or jury in ascertaining what shall constitute guilty conduct thereunder; that what may not be a satisfactory exculpatory statement to the arresting officer may be such to judge or jury; that the "satisfactory account" depends upon the personal views of the arresting officer. If the ordinance is susceptible *only* to such construction, thus rendering it vulnerable to the charge of constitutional infirmities, we would have to reverse.

 Legislation which provides "an adequate warning as to what conduct falls under its ban, and marks boundaries sufficiently distinct for judges and juries fairly to administer the law in accordance with the will of" the legislative body satisfies the constitutional requirements. *United States v. Petrillo,* 332 U.S. 1, 67 S. Ct. 1538, 91 L. Ed. 1877. Language which gives sufficient notice to the person and furnishes guides for the adjudicative process meets the test of definiteness.

But indefiniteness which leaves to officer, court or jury the determination of standards in a case-by-case process invalidates legislation as being violative of due process, as contravening the mandate that an accused be advised of the nature and cause of the accusation, and as constituting an unlawful delegation of legislative power to courts or enforcement agencies. *United States v. L. Cohen Grocery Co.,* 255 U.S. 81, 41 S. Ct. 298, 65 L. Ed. 516. See *People v. Lange,* 48 Colo. 428, 110 Pac. 68; *Olinger v. People,* 140 Colo. 397, 344 P. (2d) 689.

 If legislation is susceptible of two interpretations,

neither the trial court nor this court has a choice if one construction sustains it; the duty of both courts is to adopt the construction which will save the enacted law. "If a statute is susceptible of two constructions, one of which will render it constitutional and the other of which will render it unconstitutional in whole or in part, or raise grave and doubtful constitutional questions, the court will adopt that construction of the statute which, without doing violence to the fair meaning of language employed by the legislature therein, will render it valid * * * " 16 C.J.S. §98, p. 375, et seq.

The same admonition was voiced by Mr. Justice Moore in *Ginsberg v. Centennial Turf Club,* 126 Colo. 471, 251 P. (2d) 926, in these words:

" * * * If the statute may be reasonably subject to two different constructions, one of which would result in invalidity and the other in validity, it is the duty of our court to harmonize it with the constitution by adopting that construction which does not invalidate the work of the legislative branch of government."

Constitutionality of ordinances is determined by the same rule of construction. *City of Sedalia v. Shell Petroleum Corp.,* 81 F. (2d) 193, 106 A.L.R. 1327; *Bjork v. Safford,* 333 Ill. 355, 164 N.E. 699, 61 A.L.R. 561; *Chicago v. Washingtonian Home,* 289 Ill. 206, 124 N.E. 416, 6 A.L.R. 1584. "We do not deem it necessary to determine in these cases the validity of the ordinances if interpreted as contended for by appellant, but it is enough to say that their validity, if so interpreted, would at least be a matter of grave doubt, and that construction should be adopted which would give validity to the ordinances rather than one which would render them void or at least of doubtful validity." *City of Sedalia v. Shell Petroleum Corp.,* supra.

A pat case is that of *City of Portland v. Goodwin,* 187 Ore. 409, 210 P. (2d) 577. Involved in that case was a vagrancy ordinance which was attacked on many of the same grounds asserted in this case. The court said that

where an ordinance "is susceptible of two constructions, one of which would render it constitutional and the other unconstitutional, the courts will adopt the former."

In interpreting constitutional provisions providing for the right to enjoy life and liberty, courts have declared that the right of personal liberty consists in the power of locomotion. 16 C.J.S. §202, p. 987. "Personal liberty, which is guaranteed to every citizen under our constitution and laws, consists of the right of locomotion — to go where one pleases, and when, and to do that which may lead to one's business or pleasure, only so far restrained as the rights of others may make it necessary for the welfare of all other citizens. One may travel along the public highways or in public places, and while conducting themselves in a decent and orderly manner, disturbing no other and interfering with the rights of no other citizens, there they will be protected under the law, not only in their persons, but in their safe conduct." *Pinkerton v. Verberg*, 78 Mich. 573, 44 N.W. 579, 7 L.R.A. 507, 18 Am. S.R. 473.

The same principle has been stated thus in the case of *Beail v. District of Columbia*, D.C. Mun. App., 82 A. (2d) 765: " * * * Every citizen has the right to go freely on the streets at any hour of the day or night, provided he is there for a legitimate purpose. Such purpose may be any legitimate business or pleasure." See *Harris v. District of Columbia*, D.C. Mun. App., 132 A. (2d) 152.

And a person who is on the street at a late or unusual hour conducting himself in such manner as not to give reasonable grounds for belief that his purpose in being on the street is an unlawful one may not be required to give account of his actions. Innocent conduct should not provoke interrogation, and a refusal to give such account would not authorize conviction. *Beail v. District of Columbia*, supra.

As we construe the ordinance in question, it may be interpreted in a manner consonant with both federal and state constitutions. Such interpretation will avoid

the interdictions, express and implied, contained in the quoted passages of decisions cited above.

Construing that parts of the ordinance quoted above, one may become a vagrant in either of two ways:

(1) "Any person who wanders about the streets, alleys or other public ways or places at late or unusual hours of the night without any visible or lawful business and not giving a satisfactory account of himself," or (2) "Any person who is found abroad at late or unusual hours of the night without any visible or lawful business, and not giving a satisfactory account of himself," is deemed a vagrant. The key words among the ingredients required for either way of being a vagrant are "without any visible or lawful business" and "not giving a satisfactory account of himself."

As we analyze the ordinance, the requirement that the person give a satisfactory account of himself is connected with an overt act or conduct. A person on the street at a late or unusual hour "without a lawful business" means that his conduct or the circumstances of his presence constitute an offense or the suggestion of an intent to commit an offense. *State v. Salerno,* 27 N.J. 289, 142 A. (2d) 636. It means that "when a course of conduct indicates a reasonable belief that the use of the streets is not for legitimate purposes, an officer may ask one to account for his actions." *Harris v. District of Columbia,* supra.

On rehearing in the case of *City of Portland v. Goodwin,* supra, this very point was made in clarifying the original opinion by this language:

"Defendants appear to construe our opinion as holding that the mere act of placing oneself on the street constitutes 'an overt act authorizing arrest.' The opinion taken as a whole implies nothing of the sort. The overt act which violates the ordinance and thus authorizes arrest is the willful act of going upon the street during the prohibited hours and then and there manifesting by conduct an unlawful purpose."

As suggested by the court in *State v. Salerno,* supra, in speaking of statutes and ordinances similar to the one now being considered,

"Usually provisions for a good account are associated with conduct or circumstances in themselves offensive or suggestive of an intent to commit a crime. See *Benton v. United States,* 98 U.S. App. D.C. 84, 232 F. (2d) 341 (D.C. Cir. 1956); *Harris v. District of Columbia,* 132 A. (2d) 152 (Mun. Ct. App. D.C. 1957); *City of Portland v. Goodwin,* 187 Or. 409, 210 P. (2d) 577 (Sup. Ct. 1959)."

In the instant case we hold that there was conduct on the part of Dominguez which made it proper for the officer to require a satisfactory exculpatory statement and that the statements given were not a satisfactory account in view of all the circumstances.

We lastly consider the question of the nature of vagrancy. It cannot be gainsaid that vagrancy is a problem in populous areas. It is definitely a local and municipal concern. Being such, the City and County of Denver had authority under Article XX to adopt an appropriate ordinance to cope with the problem.

The judgment is affirmed.

MR. JUSTICE DAY not participating.